WINFIELD S. MATTERN v. TIMOTHY F. MCCARTHY.

FILED FEBRUARY 9, 1905. No. 13,515.

1. **Bailment:** BAILEE'S LIABILITY. When a bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for negligence.

2. **Contract:** CONSTRUCTION. Contract examined, and *held* to require the defendant to use reasonable and ordinary care to care for, feed and protect the cattle specified therein, and to make him liable for negligence.

3. **Damages.** "Just remuneration," as used in the contract, means the remuneration which the plaintiff would be justly entitled to under the law for the loss of his cattle by the defendant's negligence, and this is the value of the cattle lost.

4. **Care Required.** When a contract requires an agister to care for cattle "in all respects as he would for similar property of his own," the legal presumption is that he would give his own cattle such care as an ordinarily prudent man would under like circumstances, and this is the measure of the diligence required of him under the contract.

5. **Instructions:** REVIEW. Objections to instructions *en masse* will not be considered where any of those so complained of are correct.

ERROR to the district court for Hamilton county: BEN-JAMIN F. GOOD, JUDGE. *Affirmed.*

*Stark & Grosvenor,* for plaintiff in error.

*Hainer & Smith, contra.*

LETTON, C.

This action was commenced in the district court for Hamilton county by the defendant in error, Timothy F. McCarthy, as plaintiff, against the plaintiff in error, Winfield S. Mattern, as defendant. The parties will be named hereinafter as they appeared in the district court. The action is for damages for breach of contract. The contract is as follows:

"Agreement in Duplicate. This agreement made and entered into this 26th day of February, 1901, by and between W. S. Mattern, party of the first part, and T. F. McCarthy, party of the second part, both of Hamilton county, Nebraska, Witnesseth: That said party of the first part, in consideration of the covenants and agreements of the said party of the second part hereinafter set forth, does by these presents, agree with said party of the second part, that he will pasture, feed, and care for forty-one (41) head of cattle, consisting of forty (40) cows and one (1) bull, and the increase thereof, all belonging to said party of the second part, caring for them in all re-

spects as he would for similar property of his own, for a period of three (3) years beginning May 1, 1901, and that at the expiration of said three years he will deliver and return to the party of the second part all of said forty-one (41) head of cattle and one-half the increase thereof, and one-half the increase of such increase.

"In consideration of the performance of the above agreements upon the part of said party of the first part, the said party of the second part agrees to give to said party of the first part one-half the increase from said forty-one (41) head of cattle and one-half of the increase of such increase, said one-half of the increase to consist, in numbers, of one-half of the male and one-half of the female increase, a division of such increase and the giving thereof to the party of the first part of his share, to take place annually at the branding period, to wit, on or about the 1st of October.

"It is expressly understood and agreed by the parties hereto that in case of the death, or loss, of any of the said forty-one (41) head of cattle, or of any of the increase thereof, arising from the fault, neglect or improper care on the part of the party of the first part, then said party of the first part shall, on or before the termination of this contract, make just remuneration to said party of the second part, but it is also expressly agreed that in case of the death of any of said forty-one (41) head or any of the increase thereof, resulting from disease, old age, or other cause which said party of the first part, by reasonable and ordinary care could not have prevented, then in such case said party of the first part is not to be held liable for the return of said cattle or any equivalent thereof.

"It is further expressly understood and agreed that if either of the parties hereto should desire to terminate this contract before the expiration of the said three years, such party may do so at the expiration of any year from the date hereof of this contract by giving to the other party three (3) months' notice of his intention so to do,

and such division or divisions of the increase of said cattle as may have been made previous to such termination, and the return of the said forty-one (41) head of cattle or remainder of said cattle as above indicated, and of the one-half of the increase as above indicated, shall be regarded as a full settlement under this contract by the parties hereto.

"Made in duplicate the day first above written."

The plaintiff alleged performance on his part, delivery of the cattle to the defendant; that during the first year of possession of said cattle there was an increase of 31 head, which was divided according to contract, 16 head being allotted to plaintiff and all of said cattle and increase being retained by Mattern; that defendant neglected to properly feed, shelter, care for or breed said cows so that during the next year there was only an increase of two head; that if properly cared for and bred said cows would have had 30 calves; that on account of this negligence 21 head of the original stock and three head of increase died or were lost; that on July 16, 1902, under the terms of a written agreement the remaining cattle and the remaining increase were divided, and the matter of the loss either by death or otherwise was expressly left open for future determination; that under this agreement Mattern returned to McCarthy 20 head of the original stock and 13 head of the increase for the year 1901, and two head of increase for 1902, and no more, and further averred the performance of all conditions on his part. The defendant admitted the execution of the contract and the contract of dissolution; alleged that the cattle were at all times properly cared for as if they belonged to him; that the death of the cattle referred to in plaintiff's petition was without fault or negligence on his part, and denied all other allegations of the petition. Trial was had, and a verdict rendered for the plaintiff, from which the defendant prosecutes error to this court.

A large number of assignments of error have been made

as to the admission and exclusion of testimony and the giving and refusal of instructions. In the view we take of the law of the case, however, it will only be necessary to examine a few of the errors assigned.

In the first place it may be well to determine the legal effect of the contract, since the defendant contends that the measure of his duties and liabilities fixed by the contract is different from that of the general law governing cases of agistment of this nature. The contract was for the benefit of both parties. The bailor delivered the possession of his cattle to the bailee with the intention upon the part of both of the parties to the contract that the result of the agistment would be mutually advantageous. The contract provides that the bailee "will pasture, feed and care for" the cattle, "caring for them in all respects as he would for similar property of his own," and that in case of the death or loss of any of the cattle or of any of the increase "through the fault, neglect or improper care" on the bailee's part, he should "make just remuneration" to the bailor; that in case of the death of any of the cattle or increase resulting from disease, old age or other causes which the bailee by reasonable and ordinary care could not have prevented, then in such case the bailee is not to be held liable for the return of the cattle. The general rule of law is that, where a bailment is mutually advantageous to both parties, the bailee is required to exercise only ordinary and reasonable care and diligence. He must exercise such care as a man of ordinary prudence would use under the same circumstances toward his own property. *Calland v. Nichols,* 30 Neb. 532.

It will be observed that the requirements of the contract in regard to the quantum of care to be given to the cattle, and the liability of the defendant in case of neglect, are the same as they would have been had no specifications been made in the contract as to the diligence which he should exercise, or the damages which he should pay for lack of ordinary care. The contract, therefore, though in one sense special, merely speaks the language

of the law as to the duty and liability of the defendant and is so far general in its nature. When the defendant agreed to give the cattle the same care as his own, the intention evidently was that he should, and the legal presumption is that he would, give his own cattle the same care that an ordinarily prudent man would under like circumstances.

The 7th and 8th assignments of error in the motion for a new trial are as follows: "7th. The court erred in refusing to give the first and second instructions asked by the defendant. 8th. The court erred in giving the 4th, 5th, 6th and 9th paragraphs of instructions, all of which were duly excepted to by the defendant."

Under the familiar rule in this court, since these assignments of error have been made to the instructions *en masse*, if any one of the instructions refused by the court was properly refused, or any of those the giving of which is assigned as error was properly given, these assignments are not well taken.

The first instruction asked by the defendant and refused by the court is as follows: "The jury are instructed that as a matter of law a special contract of bailment prevails in determining the liabilities of the parties as against general principles of law applicable in the absence of express agreement." Since, as we have seen, the liabilities under this contract are the same as under the general principles of law, the defendant could be in no wise prejudiced by the refusal to give the instruction; and in fact it may well be questioned whether the court would not have erred in giving such an abstract proposition of law to the jury, which we think was without relevancy in this particular case. This instruction, therefore, being properly refused, under the rule we cannot examine further into this assignment.

The fifth instruction given by the court is as follows: "Under the terms of the contract herein sued upon the defendant is liable for the value of any cattle delivered to defendant or any of the increase thereof which were lost,

dead or not returned, if you believe from the evidence that such loss, death or failure to return such stock could have been prevented by the defendant in exercising reasonable and ordinary care in handling such stock. On the other hand, it is provided by said contract, and the law is that he would not be liable to plaintiff on account of the death of any of the 41 head of cattle or the increase thereof resulting from disease, old age or other causes which the defendant by reasonable and ordinary care could not have prevented."

It is objected to this instruction that it makes the defendant liable for the value of cattle lost, when the contract reads that in case of the death or loss, etc., the defendant should make "just remuneration," and it is argued that to determine what is just remuneration the facts specially applicable to this contract and the mutual loss of profits, if any, would have to be taken into consideration. But we think that the phrase "just remuneration" as used in the contract means the remuneration which the plaintiff would be justly entitled to under the law for the loss of his cattle by the defendant's negligence, and this would certainly be the value of the cattle lost. Loss of profits could be taken into consideration where the property was lost or destroyed without negligence upon the part of the defendant. In such case each party to the contract must bear his share of the loss since each is equally free from fault, but where the loss is occasioned solely by the wrongful neglect of the defendant he is liable both under the contract and the common law for the actual value of the property. Instruction No. 5, therefore, being correctly given, the whole assignment of error with reference to the 4th, 5th, 6th and 9th instructions must fall.

The defendant complains that the court erred in giving instruction No. 4 to the jury as to the burden of proof. The giving of this instruction is assigned as error together with the 5th instruction which we have seen was correctly given. We cannot, therefore, consider this point.

The other assignments of error are with respect to alleged errors in the overruling and sustaining of objections to specific questions and the refusal of the court to strike out certain testimony. We have examined these assignments carefully and find no error in the rulings·of the court prejudicial to the defendant. The evidence objected to is mainly with regard to the condition of the cattle at the time they were delivered to the defendant; also opinion evidence as to the number of calves which probably would have been dropped by the cows if they had been properly bred and cared for and as to the value of calves in August, 1902. This evidence was given by men who were farmers, and who had had experience in growing and handling cattle. We are satisfied that they were competent and fully qualified to express an opinion on these matters. It is true the evidence was merely of opinions, but that is all that could be adduced under the circumstances. Though plaintiff's damages were somewhat difficult to ascertain, as is usually the case where gains prevented is an element of damage as well as losses sustained, it seems to us that they were not so remote and speculative but that the jury could arrive with reasonable certainty at the probable loss of profits which the plaintiff suffered, and that evidence of the character objected to was admissible.

However, the amount of the verdict is so small that the jury probably disregarded all this evidence as to loss of profits, and only allowed plaintiff to recover damages for a part of the cattle that apparently died of neglect. The value of all the cattle that died of other causes than disease or old age is shown to be more than the amount of the verdict. Hence the defendant was not prejudiced by the admission of the evidence complained of even if it had been erroneous.

The defendant further complains that he was not allowed to show how the wind-breaks and other provisions for the care of cattle upon the defendant's ranch compared with those upon other average cattle ranches in Garfield

county, nor to show what the custom was for caring for cattle in Hamilton county and to prove that there was a difference between the usual method of caring for cattle in Hamilton county and in Garfield county. We fail to see wherein the defendant was prejudiced by the refusal of the court to permit this evidence. The question before the jury was whether or not the defendant had used ordinary and reasonable care in the care of the plaintiff's cattle. The defendant was permitted to show by the witness Boag what the custom and usage as to caring for cattle was in Garfield county. If there was a difference in the manner of taking care of cattle in Garfield county from that in Hamilton county this would be immaterial and would not excuse the defendant from exercising the care that an ordinarily prudent person would under like circumstances. If the defendant had been able to show that it was the custom in Garfield county to provide absolutely no protection for live stock during the winter, which is as strong a proposition as he could possibly have established, it would not excuse him, because common experience is sufficient to teach any man, whether familiar with the care of cattle or not, that climatic conditions in this latitude demand some protection for animals from the winter storms. This fact has been recognized by the law-making power, and failure to properly shelter cattle is a crime in this state. Under section 67c of the criminal code, it is a misdemeanor for any person having in charge any cattle to carelessly neglect to provide sufficient shelter therefor.

The defendant was permitted to show to the jury all the circumstances connected with his care of the cattle, and a number of his witnesses testified that the cattle received the usual and ordinary care, feed, shelter, breeding and treatment.

The evidence was conflicting as to this and as to the age and condition of the cattle, and in regard to the amount of care that was bestowed upon them by the defendant, but the verdict is amply supported by the evidence. The

damages awarded are not excessive and we recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.