Cox v. Chase.

No. 19,498.

W. H. COX, *Appellee*, v. FRED F. CHASE and E. A. CHASE, Partners, etc., *Appellants*.

SYLLABUS BY THE COURT.

1. CONTRACT—*Pasturing Cattle—Duty to Supply Water.* A contract to pasture certain cattle during the season in a named pasture, which the owners of the cattle had never seen, implied an agreement to supply water as well as grass.

2. SAME—Under the contract in question the plaintiff owner is held for ordinary care to keep such pasture supplied with water, and to give the defendants timely notification in case of its failure.

3. SAME—*Ordinary Care—Question for Jury.* Such ordinary care was a question for submission to the jury upon competent evidence under proper instructions.

4. PASTURING CATTLE—*Failure of Water—Measure of Damages.* Failure of water rendered the pasture valueless and worked a failure of consideration which, together with any damage properly shown, should be deducted from the contract price of the pasturage for the season.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed May 8, 1915. Reversed.

*W. L. Huggins,* and *Humbert Riddle,* both of Emporia, for the appellants.

*W. N. Smelser, R. M. Hamer,* and *H. E. Ganse,* all of Emporia, for the appellee.

The opinion of the court was delivered by

WEST, J.: This was an action to recover an alleged balance due for pasturing cattle for the season of 1913. The substantial part of the contract is as follows:

"Witnesseth, that the said party of the first part this day agrees to pasture for the said parties of the second part, in his pasture known as the 'Hume' pasture, four miles east of Bazaar, Chase County, Kansas; nine hundred and three head of cattle [verbally changed to 923 later], that said first party agrees to receive all of said cattle at the station in Bazaar, Chase County, Kansas, and to deliver the same to said parties of the second part in any number they may desire at said station during said pasture season or at the end thereof; that when said season closes, said first party agrees to be responsible to second party for all cattle lost during said pasture season, and agrees to pay them for such lost cattle, what said steer or steers that may be lost cost second parties, together with the freight added; in case any cattle die then first party shall keep the brand and shall not be liable for all cattle that may die during said season. Said first party shall keep salt at all times in said pasture for said cattle.

"In consideration of the covenants set forth above, second parties agree to pay first party eight dollars per head for the pasturing of said cattle, to be paid when said cattle are taken out of said pasture, but should said cattle be kept in said pasture to any date later than October 1, 1913, then second parties agree to pay said party all of said rent on the first day of October, A. D., 1913."

The answer admitted the execution of the contract and the delivery to plaintiff of nine hundred twenty-three cattle and the agreement to pay eight dollars and fifty cents a head for the pasturing thereof; also alleged that the plaintiff was an agister and it was his duty to give the cattle such care and attention as an ordinarily prudent man would under similar circumstances give his own cattle and to keep the defendants informed of the condition of the pasture and of the cattle; that when the cattle were delivered the

plaintiff orally stated to the defendants that he would take care of them as if they were his own; that they knew him to be a capable cattle man of long experience and depended on him to take prudent care of their cattle; that about the fifteenth of August the water began to fail, and the employee of the plaintiff who looked after the pasture for him notified him on the 6th of August of the failing condition of the water, and within a few days thereafter the plaintiff went from his home to this employee and remained there until after the cattle were shipped; that the water continued to decrease and became wholly inadequate, the plaintiff wholly failing to advise the defendants thereof, but on the 19th of August after the water had failed he notified them by letter that there was an adequate supply of water in the pasture. A copy of this letter contained a statement that while the grass and water were plenty the cattle kept the latter stirred up and in bad shape and would soon shrink if not changed. "Will keep you posted as to the cattle;" that the plaintiff neglected to take reasonable precaution to furnish a more adequate supply of water, and that with reasonable precaution an adequate supply could have been furnished, and that about the 25th of August, long after the supply had failed, the plaintiff notified the defendants of such failure, whereupon they were compelled to ship the cattle, they being in such shape from lack of water that damage was suffered in the sum of $6810, for which judgment was asked. In reply, after a general denial, it was alleged that in his pasturage of such cattle the plaintiff exercised ordinary care in keeping them and such care as an ordinarily prudent man would use in the performance of the same duty towards his own property; that the plaintiff notified the defendants on August 5 of the failure of water, and again on August 26, and that he without consideration drove the cattle to water a distance of four miles and scraped out the holes in the creek in an effort to conserve the water supply, and

that in the summer of 1913 there was a severe and prolonged drouth, and that all the lack of water complained of was unavoidable and an act of God and not the result of any fault of the plaintiff, who did everything within his power to alleviate the condition. A supplemental answer was filed setting up the loss of one month's pasturage in the sum of $1316.20.

The plaintiff testified to receiving the cattle and to returning them on account of the defendants, and that there remained unpaid the sum of $2408.

The defendants offered to show that at the time the contract was executed the defendants had never seen the pasture in question but that the plaintiff described it as one of the best in Chase county, stating that there was an abundant water supply and that if he took the cattle he would look after them as he would after his own. They offered to prove that for a small expense the plaintiff could have fenced the ponds and prevented the cattle from wading in them and could have put in tanks and pipes and used other means to secure water; also that other cattle men in the vicinity used such means successfully, and that such is the custom in that vicinity observed by the owners of pastures in order to furnish water; also that prior to the making of the contract the plaintiff stated that he was charging the price he did because of the excellency of the pasture, its abundant grass and water, and on account of the extra care he was to give the cattle.

Testimony was introduced to the effect that on August 26 one of the defendants had a conversation with the plaintiff over the telephone in which it was stated that the cattle were out of water; that the defendants did not want them driven four miles for water every day, and if the plaintiff could not get water for them he supposed they would have to ship the cattle out; that the next day cars were ordered. It was also testified by one of the defendants that there was a shrinkage of fifty cents a hundred pounds in their value, and by the other

Cox v. Chase.

that it was from fifteen to twenty-five cents a hundred pounds.

The trial court denied the offers to prove and directed a verdict for the amount sued for, thus holding in effect that the plaintiff had complied with his contract. which in the course of the trial the judge remarked that he did not regard as a lease but as an agreement to pasture so many head of cattle on that pasture.

The plaintiff claims that about August 7 in a letter he offered to scrape the bottom of the creek and increase the water if the defendants wished him to, and it appears that near that date one of the defendants wrote him that it would be a big help if the water was getting low. It was also testified that on the 28th the plaintiff and his fence rider stated that arrangements had been made to drive the cattle to water for two or three days but not longer. It was further testified that the cattle were shipped out because they could not be watered and because the plaintiff and his employee said they would have to be taken out. Also that they were driven to water a few times, and that they were seen "walking the fence" at various times by several witnesses.

The case has been presented and argued by the plaintiff on the theory that he had done all he contracted to do, and by the defendants on the theory that the contract was one of agistment requiring ordinary care on the part of the plaintiff to keep the pasture supplied with water and that they were erroneously precluded from showing want of such care.

A careful examination of the contract and all the conditions and circumstances shown has led to the conviction: (1) That the contract is essentially one for the pasturage of cattle and is not a lease; (2) that as a pasture without grass would be an impossibility, so one without water would be without value; (3) that the contract carries the implication that the pasture should have necessary water as well as necessary grass,

and that the plaintiff is held for ordinary care to keep the pasture supplied with water, at least to the extent of using due diligence to conserve the natural resources of the place, and to give the defendants timely notification in case of its failure; (4) that such ordinary care was a question for the jury to determine from competent evidence under proper instructions; and (5) that the failure of water rendered the pasture valueless thereafter, and to this extent the consideration failed, and the defendants are entitled to deduct from the total contract price such damages and failure of consideration as may be properly shown.

In the case of *Brown v. Trust Co.*, 71 Kan. 134, 80 Pac. 37, relied on by the plaintiff, the parties went over the pasture and examined it before contracting, while here the defendants had never seen the pasture, and had a right to assume that it would supply water as well as grass for their cattle.

The defendants alleged a want of ordinary care, and in reply the plaintiff alleged the exercise thereof, thus making it an issue on which both parties had a right to offer competent evidence.

Authorities directly in point have not been cited or found, but the following are more or less in support of some of the conclusions reached, all of which conclusions appear to rest upon principles of reason and fairness. (*Calland v. Nichols*, 30 Neb. 532, 46 N. W. 631; *Mattern v. McCarthy*, 73 Neb. 228, 102 N. W. 468; *Darr v. Donovan*, 73 Neb. 424, 102 N. W. 1012; *Hines v. Shafer*, [Tex. Civ. App. 1903] 74 S. W. 562; *Scovill v. Melton*, 38 Tex. Civ. App. 351, 85 S. W. 463; *J. B. Wallis & Co. v. Wallace*, [Tex. Civ. App. 1905] 92 S. W. 43; *Arrington Brothers & Co. v. Fleming*, 117 Ga. 449, 43 S. E. 691, 97 Am. St. Rep. 166; *Crawford v. Cashman & Son*, 82 Mo. App. 554.)

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.