N. B. BROWN & CO. v. THE ST. JOHN TRUST COMPANY.

No. 13,992.    (80 Pac. 37.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Interpretation.* The interpretation of an unambiguous written contract is a matter of law for the court, and such a contract, when completed, is supposed to embody all prior understandings and negotiations, and is not to be enlarged, varied or contradicted by parol testimony.

2. —— *Terms Construed.* The contract in question held to be for the furnishing of a particular pasture, and not for furnishing sufficient pasturage for a certain number of cattle.

3. —— *Liability for Damages.* The neglect of duties devolving on plaintiffs' own agent furnishes them no basis for the recovery of damages from the defendant.

Error from Reno district court; MATTHEW P. SIMPSON, judge. Opinion filed March 11, 1905. Affirmed.

STATEMENT.

THE alleged non-compliance with a contract made between N. B. Brown & Co. and the St. John Trust Company for the pasturage of cattle was the basis of an action brought by the former against the latter. The following is a copy of the contract:

"This is to certify that the undersigned has this day contracted to receive from N. B. Brown & Co., of Midland, Tex., eighteen hundred (1800) head of mixed cattle, at the stock-yards at Garden City, Kan., which they take for the pasturing season of 1902 at two dollars ($2) per head for the season or any part thereof, and such season is to expire on the 15th day of October, 1902.

"The undersigned agree to become responsible to said N. B. Brown & Co. for the safe care and keeping of said eighteen hundred (1800) cattle, except those that may die by natural death, and in case of said natural death they are to show brands where the cattle have died. They agree to deliver the same in the stock-yards at Garden City, Kan., and such delivery is to be made in lots of not less than two hundred (200) or more, when called for upon reasonable notice by N. B. Brown & Co., on or before October 15, 1902.

"The undersigned agree not to overstock the pasture where the cattle are kept, and not to put other than the eighteen hundred (1800) cattle described in this contract in said pasture, and agree to furnish abundance of salt and water for the well-keeping of said cattle.

"Said pasture is known as the Stevens pasture, and is located sixteen miles (16) southwest of Garden City, Kan. Said N. B. Brown & Co. are to pay five hundred ($500) dollars when the cattle are put in the pasture, and the remainder of the pasture bill when cattle are delivered to them in the stock-yards at Garden City, Kan. All cattle to be branded in one of the following brands: [Description.]

"Any cattle that are lost other than by natural death, through the neglect of the undersigned, are to be paid for at their reasonable market value. Said

Brown & Co. agree to receive said cattle at the Garden City stock-yards upon their return from the pasture, and to pay the pasture bill on same as above set forth.

"This May 15, 1902.

      (Signed)        THE ST. JOHN TRUST CO.,
      (SEAL.)              By A. E. ASHER, *Secretary*,
                           By HOWARD GRAY, *Treasurer*.
               N. B. BROWN & CO."

The overstocking of the pasture, and the failure to furnish sufficient salt and water for the cattle, are the breaches of which complaint is made. After the plaintiffs offered their evidence the court sustained a demurrer thereto, and gave judgment for the defendant. The plaintiffs complain.

*G. L. Miller,* for plaintiffs in error.

*George A. Vandeveer,* and *F. L. Martin,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: The result of this proceeding depends mainly upon the interpretation to be placed upon the contract quoted in the foregoing statement. There had been negotiations between the parties for pasture in Kansas for cattle then in Texas, and a representative of N. B. Brown & Co. came to Hutchinson, Kan., expecting to rent the Pierceville pasture, but when he arrived he found that the defendant had already disposed of that pasture. The defendant then offered to rent plaintiffs the Stevens pasture in Finney county, and there is a claim that defendant represented to plaintiffs that it was as large and as good a pasture as the one at Pierceville. The person representing the plaintiffs declined to rent the pasture without examining it, and so the representatives of each of the parties went from Hutchinson to the Stevens pasture together, and rode over and inspected it, after which the contract in question was made.

The plaintiffs therefore knew, or had the opportunity of knowing, the extent and character of the pasture before renting it. The contract then made is supposed to embody all prior understandings and negotiations. It speaks for itself, is not ambiguous, and cannot be enlarged, varied or contradicted by parol evidence. There was no attempt to impeach the contract by reason of fraud or misrepresentation, nor to show that any later or other agreement was made.

The principal complaint is that the acreage of the Stevens pasture was not as great as that of the Pierceville pasture, and that it was insufficient to afford pasture for the plaintiffs' cattle to the end of the season, which happened to be a dry one. The extent of the pasture was as well known to the plaintiffs as to the defendant. The contract did not provide that it should afford as much grass as the Pierceville pasture, nor that it should furnish sufficient grass for plaintiffs' cattle. The agreement was to furnish a particular pasture, at a certain price; that plaintiffs' 1800 head of cattle should be pastured there, and, in effect, that it should not be overstocked by putting other than plaintiffs' cattle in the pasture. So it appears that plaintiffs got what they contracted for— the Stevens pasture. No cattle other than plaintiffs' (which were about 1700 in number) were put into the pasture, and if it was overstocked it was not done in violation of the contract. On that year, as on previous seasons, Stevens, the owner, reserved a small portion of the pasture for his own cattle, but the division or line fence of the part reserved was pointed out to the plaintiffs' representative, and the boundaries of the pasture were well understood before the contract was made.

Some effort was made to show that for a short time not enough salt was furnished and that the water-supply was insufficient. It appears, however, that the man left in charge of the cattle was a former em-

ployee of the plaintiffs, who acted in behalf of both plaintiffs and defendant, and whose compensation was paid by both. He never made complaint, nor gave any notice that there was a lack of either salt or water. Plaintiffs cannot well complain of, nor recover damages for, the neglect of their own agent. Aside from the fact that the care of the cattle was placed in a man of their own choosing, no proof was offered that any particular loss resulted from a lack of either salt or water.

Under our interpretation of the contract no recoverable damages were proved, and the demurrer to the evidence was rightly sustained.

The judgment is affirmed.

All the Justices concurring.

MASON, J., not sitting.