No. 20,633.

W. H. Cox, *Appellee*, v. Fred F. Chase and E. A. Chase, Partners, etc., *Appellants*.

SYLLABUS BY THE COURT.

1. Pasturing Cattle—*Contract Not a Lease.* A cattle man who contracts with a ranchman to pasture his cattle in a certain field or pasture, for a season, does not thereby become the lessee and tenant of such pasture.

2. Same—When one takes in and pastures cattle on his land for reward he is not thereby a landlord, but an agister.

3. Trial—*Improper Evidence Withdrawn—No Material Error.* Evidence improperly admitted but afterwards withdrawn, with the instructions thereon, can not in the absence of an affirmative showing to that effect be said to have worked material prejudice.

4. Pasturing Cattle—*Failure of Water—Exclusion of Evidence—Harmless.* The exclusion of the evidence of one of the defendants that in the ordinary course of their business they would not have shipped until thirty days after they did if there had been plenty of water was error, but as he was permitted to state the market conditions thirty days later the error was rendered harmless.

5. Same—*Shrinkage—Competent Evidence.* In a contest over the pasturing of cattle involving an alleged failure of water and shrinkage and damage, evidence of the weight of the cattle when taken and when shipped was competent.

6. Same—*Exclusion of Certain Evidence—Not Error.* Evidence of the condition of cattle of the same herd and brand kept in a pas-

Cox v. Chase.

ture sixty or seventy miles away where the water did not fail was offered and rejected. *Held*, that as this might have involved collateral issues as to the grounds of similarity of the two pastures its exclusion was not error.

7. SAME—*Instructions*. It was not material error to refuse a certain instruction which was substantially covered by one given.

8. NEW TRIAL—*Rejected Evidence Must be Produced on Motion*. Rule followed that to be availed of on appeal rejected evidence must be presented to the trial court at the hearing of the motion for a new trial. (Civ. Code, § 307.)

9. TRIAL—*Evidence—Instructions*. The withdrawal from the jury of certain evidence unfavorable to the defendants, together with the instructions thereon and an oral repetition of certain parts of the written charge already given, did not constitute error of which the defendants can complain.

10. SAME—*Request for Written Instructions Denied—No Prejudicial Error*. During the giving of the oral instructions already referred to, the court was requested to reduce them to writing and attach them to the others for the use of the jury, which request was denied. *Held*, that as it does not appear that written instructions had been requested, and as no request was made for further argument to the jury, no prejudicial error was committed by such denial.

11. CLASSIFICATION OF ERRORS—*Prejudicial—Harmless*. In this state error does not raise the presumption of prejudice. Experience has led to the classification of errors into those termed prejudicial and that greater legion denominated harmless. For the former only can reversal be ordered.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed February 10, 1917. Affirmed.

*W. L. Huggins,* and *O. T. Atherton,* both of Emporia, for the appellants.

*W. H. Carpenter,* of Marion, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover for pasturing certain cattle. The jury found in his favor for the sum prayed for less five hundred dollars. The defendants appeal. The contract over which the controversy arose was, aside from the formal parts, in these words:

"Witnesseth, that the said party of the first part this day agrees to pasture for said parties of the second part, in his pasture known as the 'Hume Pasture,' four miles east of Bazaar, Chase county, Kansas, nine hundred and three head of cattle; that said first party agrees to

receive all of said cattle at the station in Bazaar, Chase county, Kansas, and to deliver the same to said parties of the second part in any number they may desire at said station during said pasture season or at the end thereof; that when said season closes, said first. party agrees to be responsible to second party for all cattle lost during said pasture season, and agrees to pay them for such lost cattle, what said steer or steers that may be lost cost second parties, together with the freight added; in case any cattle die then first party shall keep the brand and shall not be liable for all cattle that may die during said season. Said first party shall keep salt at all times in said pasture for said cattle.

"In consideration of the covenants set forth above, second parties agree to pay first party eight dollars per head for the pasturing of said cattle, to be paid when said cattle are taken out of said pasture, but should said cattle be kept in said pasture to any date later than October 1, 1913, then second parties agree to pay said first party all of said rent on the first day of October, A. D. 1913.

"This contract is for the year nineteen hundred thirteen."

When the case was here before (*Cox v. Chase,* 95 Kan. 531, 148 Pac. 766) it was held that the trial court erred in denying the defendants' offers to prove and directing a verdict for the amount sued for. It was said that in the course of the trial the judge remarked that he did not regard the contract as a lease, but as an agreement to pasture so many head of cattle on that pasture. The exact language shown by the abstract in that case was:

"I don't regard this contract—I haven't in my reading of it, regarded this contract as a lease of that pasture to dispose of it; it is an agreement to pasture so many head of cattle on that pasture."

It was held "that the contract is essentially one for the pasturage of cattle and is not a lease." (p. 535.) It was said that "in the case of *Brown v. Trust Co.,* 71 Kan. 134, 80 Pac. 37, relied on by the plaintiff, the parties went over the pasture and examined it before contracting, while here the defendants had never seen the pasture, and had a right to assume that it would supply water as well as grass for their cattle." (p. 536.) It was also stated (p. 536) that authorities directly in point had not been cited or found. Notwithstanding all this we are now met with the repeated assertion that the only reason we did not construe the contract as a lease was the decision in the Brown case. At page twenty-seven of his brief the plaintiff says:

"That the construction that should be placed on the contract in this case is somewhat doubtful, is proven by the fact that a learned district

judge construed the contract to be a lease, and this court construed it to be a contract for the pasturing of cattle. However, if all the facts had been before this court, that were placed before the trial court at the last trial, we have no doubt but what this court would have held that this construction came within the ruling laid down in the case of *Brown v. The Trust Company*, 71st Kan. p. 134; and should be construed as a lease."

He capitalizes the provision to pay all the "rent" on the 1st of October and reminds us that the parties "so construed the contract so as to bring it within the rule laid down in the Brown case," also that "Brown went out to see the pasture before he signed the contract, which was just such a contract as the one in question." But to make it more specific we are told on page thirty-six that we construed the contract as one for pasturing cattle and not a lease, "for the reason that appellants never saw the pasture." Italics are used on page thirty-seven to reiterate the proposition that knowledge of the pasture, before signing the contract, was the "test by which such a contract is held to be or not to be a lease." One strange thing about this is that the contract in the Brown case (71 Kan. 134, 80 Pac. 37), although in many respects different from the one under consideration, was not construed to be a lease. It was held to be a "contract" "for the furnishing of a particular pasture, and not for furnishing sufficient pasturage for a certain number of cattle." (Syl. ¶ 2.)

"The agreement was to furnish a particular pasture at a certain price; that plaintiff's 1800 head of cattle should be pastured there, and, in effect, that it should not be overstocked by putting other than plaintiffs' cattle in the pasture. So it appears that plaintiffs got what they contracted for—the Stevens pasture." (p. 137.)

The Brown contract bore little, and this bears much less, resemblance to a lease.

"A lease is a contract for the possession and profits of lands and tenements, either for life or a certain term of years, or during the pleasure of the parties." (5 Words & Phrases, p. 4043; *Lumber Co. v. Malone*, 8 Kan. App. 121, 123, 54 Pac. 692; 24 Cyc. 894.)

The resident of the town who sends his cow to pasture at so much a month does not thereby become the lessee and tenant of such pasture. Neither does the cattleman who contracts with a ranchman to pasture his cattle in a certain field or pasture for a season. Were the full possession and control

of the pasture turned over to and assumed by the cattleman the relation of landlord and tenant might arise and the contract might be one of lease instead of agistment. This is defined to be "where a person takes in or feeds or depastures horses, cattle, or similar animals upon the land for reward." (1 Words & Phrases, p. 278.) This with precision and exactitude fits the contract here involved and more nearly that in the Brown case than does the definition of a lease.

The answer averred a failure to give the cattle the attention due from an ordinarily prudent man to his own cattle, failure to keep the defendants informed as to the conditions of the pasture, a failure of water and a shrinkage and damage.

After the case was remanded the reply, which alleged proper care and notification, was amended by adding an averment of a refusal to guarantee water and full knowledge of the pasture on the part of the defendants before making the contract.

A large amount of testimony was received touching the alleged refusal of the plaintiff to guarantee water before the contract was made, but as this evidence and the instructions thereon were withdrawn from the jury it can not be said from anything appearing in the record that defendant suffered material prejudice by its admission.

Over the strenuous objections of the defendants the court admitted evidence showing the weight of the cattle when they were taken into the pasture and the amount they had gained when taken out. It is argued that not only was this prejudicial error but it gave the vigilant and learned counsel for the plaintiff the chance to make a most telling but specious argument to the jury about the great profits the defendants had made from the flesh put on the cattle from the nutritious grass in the Hume pasture. As the burden of the defendants' cross-petition was that they had suffered loss by the shrinkage of the cattle on account of the failure of water and the failure to notify them thereof, and as they introduced evidence tending to show such shrinkage and loss, it was competent to show the actual condition and gain in order that from the entire evidence the jury might arrive at the proper conclusion.

Complaint is made, however, that the court refused proffered testimony to the effect that cattle from the same herd

and bearing the same brand, pastured in another county where the water did not fail, gained twenty to forty pounds more a head than those pastured by the plaintiff and were in good condition when sold, twenty or thirty days later, than those removed from the Hume pasture on account of the failure of water, and that they brought a much better price. This was ruled out as incompetent, the pasture in question being sixty or seventy miles distant from the Hume pasture. While it is claimed and the defendants offered to show that this pasture was of the same general character it is impossible to blink the fact that this testimony involved collateral issues as to the comparative. conditions of the two pastures touching soil, water, grass and possibly other matters, and while probably it would not have been error to receive such testimony (3 C. J. 40) we are unable to find that its exclusion was materially erroneous.

The court refused an instruction that the defendants were entitled to the benefits of their bargain, and that the gain made by the cattle in the Hume pasture should be considered as bearing on the question of the plaintiff's care of the cattle while in the pasture, but not as minimizing any damages by reason of loss of weight or loss of market condition which may have arisen from any act of negligence upon the part of the plaintiff in the care of the cattle while in his pasture. The court did instruct that if the defendants were compelled to remove their cattle before they would have done so in the course of their business by reason of the water failure, the consideration for the contract of pasturage thereby partially failed and they would be entitled to have the bill reduced in an amount proportionate to such failure.

"In estimating such damages . . . [the jury] should take into consideration the time from the taking of the cattle until the close of the pasture season, together with the reasonable value thereof, and the benefits received, as compared with the value of the whole pasture season."

The requested instruction should have been given in view of the evidence touching the gain and weight of the entire herd pastured by the plaintiff, but the charge given so nearly included the essentials of the one refused that we can not hold its refusal materially prejudicial.

The refusal of an express instruction touching the effect of a failure of water is complained of, but this point was sufficiently covered by the charge given by the court.

Neither can the rejection of evidence as to the current price for good pastures in the same vicinity be availed of, for the two reasons that its reception would not have shed any light on the issues, and further that it, like that offered as to the cattle kept in other pastures, was not presented on the motion for new trial as required by section 307 of the civil code. (*Miller v. Foundation Co.*, 93 Kan. 38, 143 Pac. 493; *Stout v. Bowers*, 97 Kan. 33, 154 Pac. 259; *Muenzenmayer v. Hay*, 98 Kan. 538, 159 Pac. 1.)

The court struck out the testimony of one of the defendants, that in the ordinary course of their business they would not have shipped the cattle which were taken out of the pasture if there had been sufficient water until thirty days later or possibly longer than that. This was error, and counsel say that it left no basis for that part of the ninth instruction touching the partial failure of consideration. But as the witness was permitted to state the market conditions thirty days after these shipments were made, no substantial harm was done by the ruling complained of.

The jury were sent out Saturday afternoon, and failing to reach a verdict were excused until Monday morning when the court announced a desire to change slightly some of the instructions and withdraw those touching the refusal to guarantee water, and told the jury that this left with them the question of finding what the damages were by reason of the plaintiff's neglect, if any; also the question of partial failure of the consideration, if it were a fact, of the water failing in the pasture so that the defendants did not have the full enjoyment of the pasture season.

"And if you find that they took the cattle from the pasture without the full enjoyment of the pasture season, either by reason of the negligence of the plaintiff or by reason of the failure of water, then you are instructed that you will ascertain what that failure of consideration was by taking into consideration the failure in length of the pasture season and the benefits that were derived, and the benefits that would have been derived for the whole of the season, taking into consideration all those circumstances in determining what damage, if any, resulted from failure of consideration."

The court further said:

"In taking this away entirely, I expect I ought to express a little more fully the burden that is upon the defendants in this case. That is, that the burden is upon the defendants to prove by a preponder-

Cox v. Chase.

ance of the evidence that the water supply was insufficient for the cattle, and that they were damaged by reason thereof. The burden is upon the defendants to show negligence on the part of the plaintiff and the failure of this water supply and that they were damaged by it and also the amount and extent of their damages so far as any failure of consideration may have been concerned."

The abstract shows that counsel here suggested that these remarks ought to be written and appended to the instructions for the guidance of the jury, to which the court responded:

"The instructions are not really changed except those matters were cut out of it and you may go out and consider this case and if you have any difficulty with your instructions come in later and we will discuss that matter later."

After having been out for some time the jury returned into court and announced that they had reached a verdict, but it was not received. The court said:

"I am going to reinstate a part of the instructions I took from your consideration awhile ago and I will mark it here, and I will let you go back and examine the instructions in connection with this evidence and then if you still want to return a verdict it is all right and if you don't, you may change it to suit the circumstances."

Later the jury returned a verdict for the plaintiff in the sum of $2209. The court having instructed in writing (whether so requested or not we do not know) there was no opportunity for counsel to request the additional instructions to be in writing until the court was in the act of giving them, and the fact that he did not interrupt with his request until they had been at least partially delivered is no reason why he should not have the benefit of such request; but as the remarks of the court were taken down by the reporter, and as there was no request to make further argument to the jury, without which such instructions if reduced to writing could not have been used by counsel in presenting the matter to the jury, and as really no very important change adverse to the interest of the defendants was made by the court in the instructions so given, it can not be said that they suffered any substantial prejudice by the failure to reduce the remarks of the court to writing.

It must be remembered that the withdrawal of the matters referred to from the jury operated favorably to the defend-

ants, although of course the effect of such withdrawal on the minds of the jurors may have been more theoretical than real. But we are forbidden both by precedent and by statute to reverse causes except for prejudicial error affirmatively appearing when it appears that substantial justice has been done in the case. (*Manufacturing Co. v. Bridge Co.*, 81 Kan. 616, 106 Pac. 1034; *The State v. Hammon*, 84 Kan. 137, 146, 113 Pac. 418; *Saunders v. Railway Co.*, 86 Kan. 56, 119 Pac. 552; *Root v. Packing Co.*, 94 Kan. 339, 147 Pac. 69; *Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648; *Elevator Co. v. Harrison*, 97 Kan. 289, 292, 154 Pac. 1016; *Emery v. Bennett*, 97 Kan. 490, 493, 155 Pac. 1075.)

We can not supersede the jury's verdict with one of our own,.for that would mark a new era in judicial procedure. On the contrary, we must assume, in the absence of a showing to the contrary, that their handling of the facts wrought substantial justice—not only to one, but to both of the parties. In this state error does not raise the presumption of prejudice. Experience has led to the classification of errors into those termed prejudicial and that greater legion denominated harmless. To give reversing potency to the latter would be to step aside from the path of judicial progress.

No substantial and prejudicial error having been made to appear, the judgment is affirmed.

PORTER, J., dissenting.