No. 23,086.

NICHOLS & SHEPARD COMPANY, *Appellant*, v. C. H. SWISHER,
*Appellee.*

SYLLABUS BY THE COURT.

1. SALE OF THRESHING OUTFIT—*Written Contract—Cannot Be Varied by Parol
   Evidence.* The familiar rule, that a written contract is supposed to em-
   body all prior negotiations and agreements and cannot be enlarged, varied
   or contradicted by parol testimony, is applied to a contract for the purchase
   of farm machinery.

2. SAME—*Unambiguous Contract—Construction for the Court and Not for
   the Jury.* In an action to recover damages for the failure of the defend-
   ant to accept a threshing outfit purchased under a written contract, de-
   fense was made on the ground that the contract provided that the ma-
   chinery was to be shipped from the factory with the feeder attached to
   the separator and with the tender attached to the engine and that these
   conditions were not complied with. The court, without holding the con-
   tract ambiguous and without any evidence of extrinsic facts tending to ex-
   plain the meaning of any of the terms, submitted the contract to the jury
   for their construction. *Held,* that the question was one of law for the court
   to determine, and under the facts of the case it was error to submit the
   question to the jury.

3. SAME—*Substantial Compliance with Contract by Vendor.* It being undisputed that the stacker and self-feeder were in the shipment when it arrived, and could easily have been attached after being removed from the car; that the plaintiff offered to do this provided defendant would pay the freight, as the contract required of him, *held,* under any construction of the contract, there was a substantial compliance by plaintiff.

4. SAME—*No Meritorious Defense Shown.* No meritorious defense was stated in the answer or established by the testimony.

Appeal from Trego district court; ISAAC T. PURCELL, judge. Opinion filed December 10, 1921. Reversed.

*Herman Long,* of Wa Keeney, *Frank P. Sebree, Sam B. Sebree,* and *Mord M. Bogie,* all of Kansas City, Mo., for the appellant.

*John R. Parsons,* of Wa Keeney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In May, 1916, the defendant entered into a written contract to purchase from the plaintiff a steam traction engine, separator, self-feeder, tender and other threshing machinery to be delivered at the town of Ransom, Kan. The action is to recover damages and freight charges for the refusal on his part to accept the machinery. The trial resulted in a verdict in favor of the defendant and the plaintiff appeals.

The defendant was to receive the machinery on its arrival at the railroad station, and to pay the freight from the factory at Battle Creek, Mich. In case he refused to accept the machinery or in case he canceled the order he agreed to pay the freight charges and in addition fifteen per cent of the contract price as liquidated damages. There was a provision that until June 15 the order was subject to countermand in case of crop failure. On June 14, the defendant wired plaintiff to hold the shipment until July 6, and on the 28th of June sent a letter stating that he had made up his mind not to take the machinery because he did not believe he could make his payments; that the threshing he had figured upon doing had been signed up to other machines. Plaintiff replied stating that there was no provision for countermanding the order after June 15, and before that time only for crop failure, and that they were holding the machinery to be shipped a little later in accordance with his telegram. On July 5, defendant sent a telegram asking plaintiff to countermand the order and stating that he would not accept the machine under any conditions. Plaintiff replied that it had been shipped. On July 19, the defendant sent plaintiff a telegram stating that the machinery had arrived but that there was no man there to

make settlement and asked what the plaintiff intended to do. In response to this the plaintiff sent an agent to Ransom.

The defendant testified that he first made up his mind not to take the machinery long before the first of June; that he had read the contract and knew that there was no provision authorizing him to countermand the order except for crop failure, and that there was a reasonably fair crop; that after receiving the letter refusing to allow him to countermand the order, he still did not want to take the machine; that afterwards he had changed his mind and he wanted to talk to the agent and make a settlement with him; and that finally he refused to take the machine, because the man sent out by the company would not do what defendant desired. His testimony was that he knew the condition the machinery arrived in; it was knocked down; nothing attached to it; that the self-feeder was not attached to the front of the separator; that "it looked like it would take lots of work to put it together"; that later on he told the agent that he would take the machinery "if they would put it in shape ready for the field"; that the agent was at the car and had sills, ties and everything ready to unload the machinery and offered to unload it if he, the defendant, would pay the freight, which he refused to do. It is conceded also that on the same day the defendant told Smith, the agent, that he would accept the outfit if Smith would take it off the car, set it up and take it out into the country and thresh with it for two or three days. Smith was without authority to do this and declined. The plaintiff thereafter shipped the machinery to its branch house at Kansas City, Mo.

The answer alleged among other things that the contract was entered into between defendant and William Ramsey on the one part, as purchasers, and plaintiff on the other, and that plaintiff, without any consideration of defendant's rights, released Ramsey from the contract. However, the jury in answer to special questions found that defendant consented that plaintiff should release Ramsey.

Another claim was that just prior to the signing of the contract plaintiff's agents represented to defendant that the machinery was kept in stock at Kansas City, Mo., and that it would not be necessary to ship it from plaintiff's factory at Battle Creek, Mich.; that defendant relied upon this and otherwise would not have signed the contract; that by reason of the delay occasioned by the necessity of

Nichols & Shepard Co. v. Swisher.

shipping the machinery from Battle Creek, Mich., the plaintiff "would have lost a large amount of threshing and the use of the machinery"; that he did not learn until just before the day the machinery was shipped that it was to be shipped from the factory and immediately notified plaintiff by telegram not to ship. Over the plaintiff's objections, the court permitted the defendant to testify to statements made by the parties prior to the signing of the contract. The petition contains no suggestion of fraud in obtaining the contract. The defendant admits that he read the contract before signing it, and it is supposed to embody all prior negotiations and understandings, and it cannot therefore be enlarged, varied or contradicted by parol testimony. (*Brown v. Trust Co.*, 71 Kan. 134, syl. ¶ 1, 80 Pac. 37.) The citation of additional authorities is not necessary to make plain the fact that the evidence of statements made by the parties prior to the signing of the contract was wholly incompetent.

The defendant prevailed in the court below upon a defense not specifically pleaded in the answer. It was this: On the trial he claimed that a provision of the contract required the machinery to be shipped from the factory with the feeder attached to the separator and with the tender attached to the engine, and that these conditions were not complied with. The body of the contract contains a request by defendant to ship "on or about the 20th day of June, 1916, with the usual fixtures and extras and as you usually build and furnish:

"One single cylinder Traction Engine, 20 Horse-Power, coal, with jacket and cab.

"One Separator, Red River Special, with 36 inch cylinder, 56 inch rear.

"One Stacker, wind, one 36 inch Universal Self-Feeder attached.

"One Drive Belt, canvas, 150 feet long, 8 inches wide, 6 ply."

As part of the contract the defendant signed an order for the shipment, reading as follows:

"Nichols & Shepard Company, Battle Creek, Mich. (hereinafter called the vendor) is hereby requested to ship for the undersigned, to or in care of C. H. Swisher and Wm. Ramsey at Ransom by the route you consider best and cheapest as soon as convenient One Nichols & Shepard Eng tender attached to 20 H. P. Engine ordered under date of May 10th, 1916.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Subject to same conditions as order given under date of May 10th, 1916."

Instead of construing the contract the trial court submitted the instrument to the jury with an instruction which, after stating that

in order for the plaintiff to recover it must prove by a preponderance of the evidence that it had fully complied with the conditions stated in the contract, further charged that "if the contract provides that the feeder on the separator was to be attached to the separator by the plaintiff, and that the tender was to be attached by the plaintiff to the engine, the plaintiff must have attached the same before it can recover in this action, unless it was prevented from attaching said feeder and tender by some act of the defendant." The court did not hold the contract ambiguous; no evidence was offered as to the meaning of any of the terms or of any custom respecting the matter. The effect of the submission to the jury was to allow them to construe the instrument without any rules to guide them and without evidence bearing upon the subject. Under such circumstances it is never the function of a jury to determine the meaning of a written contract.

"The construction of written instruments is a question of law for the court, and ordinarily it is error to submit such a question to the jury." (*Shear Co. v. Thompson,* 80 Kan. 467, syl. ¶ 1, 102 Pac. 848; *Brown v. Trust Co.,* 71 Kan. 134, 80 Pac. 37.)

The construction of the contract in this case did not depend upon extrinsic facts about which there was a dispute. This is apparent from the fact that no evidence was introduced for the purpose of showing the meaning of any terms. Besides, a mere reading of the instrument makes it plain that it was not contemplated that the machinery would be shipped all set up and ready for operation. From the very nature of things that would, in ordinary cases, be impracticable. There is no contention that both the stacker and self-feeder were not on the car or that they could not have been easily attached after being removed. The evidence shows the contrary. Whether the feeder was attached to the separator or the tender attached to the engine, and all loaded on a single flat car (if one could have been procured of sufficient length) were matters which could not affect the substantial rights of the defendant. Under any construction of the instrument it would be the duty of the court to hold, upon the undisputed facts, that there was a substantial compliance by the plaintiff. (*Denton v. City of Atchison,* 34 Kan. 438, 441, 8 Pac. 750; *Implement Co. v. Willhite,* 102 Kan. 56, 169 Pac. 549.)

It became the duty of the defendant upon the arrival of the machinery at Ransom to pay the freight charges, and his refusal to

do that excused plaintiff from further performance. There was no meritorious defense stated in the answer, nor established by the testimony. There were no really disputed facts for submission to a jury. (*Thresher Co. v. Nelson,* 105 Kan. 517, 184 Pac. 982; *Harvester Co. v. Foran,* 108 Kan. 343, 195 Pac. 867; *Thresher Co. v. West,* 108 Kan. 875, 196 Pac. 1061.)

The measure of damages agreed upon by the parties in their contract appears to be reasonable and equitable, and there is no contention to the contrary. By shipping the machinery back to Kansas City instead of to Battle Creek, Mich., the defendant was saved additional freight charges.

The judgment is reversed and the cause remanded with directions to render judgment in favor of the plaintiff for the amount prayed for in the petition.