No. 24,806.

THE INTERSTATE CATTLE LOAN COMPANY, *Appellant*, v. JAMES E. WARREN, *Appellee.*

SYLLABUS BY THE COURT.

1. AGISTER'S LIEN—*Pasturing Cattle—Waiver of Lien by Agister—Waiver Did Not Prevent Agister from Claiming Lien for Pasturing Some of Same Cattle for Another Season under New Contract.* An agister who waives his lien under a contract for pasturing cattle, will not for that reason, be prevented from claiming such a lien for pasturing and feeding some of the same cattle another year, under a new contract.

2. SAME. Where a mortgagee of 1,336 head of cattle procured from W., who was pasturing the cattle for the mortgagors, in March, 1919, a statement which read: "I hereby waive any liens I may now have which would be prior to the mortgage or which may accrue against said cattle by reason of their being on my pasture," and where part of the cattle were sold and the balance taken from W.'s pastures in November, 1919, were wintered in Texas, and where 626 head of such cattle were, in the spring of 1920, returned to W. under a new contract with the mortgagors, under which they were pastured through the summer and fall and fed during the winter of 1920-1921 and pastured during the spring of 1921, held, that W. was entitled to an agister's lien for the pasturage and feed during 1920-1921, superior to the lien of the mortgagee.

3. SAME. Various assignments of error in an action of replevin are held not to be well founded.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed January 12, 1924. Affirmed.

*S. C. Bloss,* of Winfield, and *William E. Byers,* of Kansas City, Mo., for the appellant.
*Ward Wright,* of Arkansas City, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one of replevin by a mortgagee to recover certain cattle held under an agister's lien. The defendant recovered and plaintiff appeals.

The controversy turns largely on whether a waiver of lien executed by the defendant in 1919 was effective in 1921 after the giving of successive notes and mortgages, and after the cattle had been taken from defendant's pastures in Oklahoma, wintered in Texas, and later returned to defendant's pastures in Oklahoma and Kansas.

The facts are substantially as follows: On March 28, 1919, Shults

and Hughs, partners, executed a series of notes and a mortgage to the plaintiff on 1,336 head of cattle to secure the sum of $137,809.50. The notes were due in August and September, 1919. It was agreed that the mortgagors would procure a waiver from the defendant of his agister's lien. This waiver was prepared by the plaintiff and executed by the defendant. It reads:

"MARCH 28, 1919.

*"The Interstate Cattle Loan Company, Kansas City, Mo.*

"GENTLEMEN: I understand you are the holders of a mortgage for $137,809.50, given by Homer Hughs and C. E. Shults, dated March 28th, 1919, and covering 1,336 head of three and four year old steers. Said steers are now being pastured on my land, and I hereby waive any liens I may now have, which would be prior to the mortgage above referred to, or which may accrue against said cattle by reason of their being on my pasture.

"Yours very truly, J. E. WARREN."

During the season of 1919, approximately 436 head of the cattle were sold and the proceeds applied upon the notes given by the mortgagors.

On November 13, 1919, Shults and Hughs executed notes in the sum of $103,144.94, due May 1, 1920, and a mortgage to the plaintiff upon the remaining 900 head of cattle. This mortgage provided that it should be construed under the laws of Texas. The others all provided for construction under the laws of Oklahoma. About the time of the execution of this mortgage the cattle were removed from the pastures of the defendant and shipped to Texas for wintering. subsequent to the execution of this mortgage, and prior to May 1, 1920, the plaintiff procured additional security upon its obligation against Shults and Hughs by way of a mortgage on a ranch belonging to Shults, the partnership receiving a credit of $15,000 upon its obligation to the plaintiff, thereby reducing the indebtedness of the partnership to plaintiff to the amount of about $88,000.

In April, 1920, 626 head of the cattle were returned from Texas and placed in the pastures of the defendant under an arrangement then made between Shults and Hughs and the defendant.

On May 1, 1920, Shults and Hughs executed notes amounting to 88,293.30, due in September and November, 1920, and another mortgage in favor of plaintiff covering 900 head of cattle. During the season of 1920, 403 of the 626 head of cattle in defendant's pasture were sold.

On December 10, 1920, Shults and Hughs executed notes amounting to $29,389.06, due June 8, 1921, and another mortgage to plain-

Cattle Loan Co. v. Warren.

tiff covering 332 head of cattle. The mortgage located some of the cattle in defendant's pasture and some elsewhere. The notes secured by the mortgage of December 10, 1920, were renewed June 7, 1921, due in July and August, 1921. These renewal notes were in smaller amounts than the notes of December 10, 1920. The notes of June 7, 1921, were renewed August 19, 1921, by a note due October 19, 1921. No other new mortgage was taken to secure the note of June 7, 1921, nor of August 19, 1921, but these notes specified that they were given "in renewal of a certain promissory note, dated December 10, 1920, which is secured by a mortgage and said mortgage security is retained to this renewal note." The notes dated December 10, 1920, and the notes of May 1, 1920, contained no such statement.

The action was filed September 23, 1921, and 223 head of cattle were replevined. The original petition and replevin affidavit were verified by R. M. Cook, vice president of plaintiff company. They alleged the execution and delivery of the notes and mortgages dated December 10, 1920. The claim of plaintiff at that time appears to have been based exclusively upon the mortgage of December 10, 1920. No claim was then made that the notes of December 10, 1920, were renewals of former notes and no claim that the plaintiff had any lien upon the cattle in controversy, other than that created by the mortgage of December 10, 1920.

On March 6, 1922, plaintiff filed an amended petition in which it claimed a lien upon the cattle under and by virtue of the mortgage, dated March 28, 1919, and that all the notes and mortgages subsequent to that date were renewals. No amended affidavit of replevin was filed.

The plaintiff contends that the letter of March 28, 1919, signed by the defendant Warren, waiving his lien, was still in force and effect after the return of the cattle to the defendant's pastures in April, 1920; that the letter was plain and without ambiguity in its terms; that its construction was for the court and not the jury, citing *Dobbs v. Campbell,* 66 Kan. 805, 72 Pac. 273, *Rankin v. Fidelity Trust Co.,* 189 U. S. 242, 38 Cyc. 1522; *Ryon v. Starr,* 214 Pa. St. 310; *Akin v. Davis,* 11 Kan. 580; *Bradish v. Grant,* 119 Ill. 606; *Dime Savings & Trust Co. v. Jacobson,* 191 Ill. App. 275; that the defendant was estopped from asserting a lien on the cattle; and that the trial court erred in refusing to so instruct the jury.

The defendant admitted the execution of the waiver and that its construction was for the court, but contends that it applied only to

the conditions existing under the first contract with the owners of the cattle; that it did not apply and was not in force after the return of the cattle from Texas to be pastured under the subsequent contract.

The trial court, by refusing to submit the letter of waiver to the jury, held that it was not ambiguous; that its construction was a matter for the court and not for the jury; and that the defendant, by its terms, did not waive his lien on the cattle for pasturage after their return under the second contract with their owners.

The trial court was not in error. Written instruments speak for themselves. Their construction is a question of law for the court. (*Brown v. Trust Co.*, 71 Kan. 134, 80 Pac. 307; *Frazier v. Railway Co.*, 97 Kan. 285, 154 Pac. 1022; *Hazelton v. Chaffin*, 109 Kan. 175, 197 Pac. 870; *Nichols & Shepard Co. v. Swisher*, 110 Kan. 20, 202 Pac. 630.)

At the time of the execution of the contract of waiver the parties undoubtedly had in mind the conditions then existing. It will be noted that the language of the waiver refers to "steers now being pastured on my land," and that "I hereby waive any liens I may now have . . . which may accrue against said cattle by reason of their being on my pasture."

The cattle were first delivered to the defendant for pasturage in March or April, 1919. They were removed from his pastures and taken to Texas in November, 1919. They were held in Texas under a chattel mortgage executed by the mortgagors to the plaintiff which, according to its terms, was to be construed under the laws of Texas. Of the original cattle, 626 head were returned to the defendant's pastures by the owners, Shults and Hughs, in April, 1920, under a new contract. The balance had been sold. The letter of waiver was prepared by the plaintiff. It was certainly not the intention of the parties at that time that defendant should pasture three- and four-year-old steers for a period of three years, nor could it have been their intention that the defendant should waive his lien for pasturage after his first contract was ended, the cattle wintered in Texas, and again returned, and he had entered into a new contract with the owners.

After the cattle were returned from Texas, a new mortgage to plaintiff provided for construction under the laws of Oklahoma. The law of that state does not grant an agister absolute priority of

Cattle Loan Co. v. Warren.

lien over a duly recorded chattel mortgage. It does provide, however, that an agister's lien take precedence over a prior recorded chattel mortgage where the animals are held and fed with the consent of the mortgagee. Under the Oklahoma decisions the consent of the mortgagee may be implied by signs, actions or facts manifested by the mortgagee or by his inaction or silence which raises a presumption that consent has been given. (*National Bank of Commerce v. McDaniel*, 174 Pac. 286 [Okla.]; *Cather et al. v. Spencer et al.*, 55 Okla. 511. See, also, *Lynde v. Parker*, 155 Mass. 481; *Griffith, &c., v. Speaks, &c.*, 111 Ky. 149.)

In addition to the general verdict in favor of defendant, the jury returned answers to special questions, as follows:

"Q. 1. Do you find that plaintiff knew cattle were being pastured or fed in Kansas? A. Yes.

"Q. 2. If you answer question No. 1 in the affirmative state when plaintiff first obtained such knowledge. A. Spring 1920.

"Q. 3. How many cattle were pastured in Oklahoma during the season of 1920? A. 250 head.

"Q. 4. How many cattle were pastured in Kansas during the season of 1921? A. 223 head.

"Q. 5. How many cattle were fed in Kansas during the winter of 1920-1921? A. 223 head.

"Q. 6. Did plaintiff ever consent to pay any pasture or feed bills to the defendant, James E. Warren? A. Yes.

"Q. 7. If you answer question No. 6 in the affirmative, state when, where and how. A. In fall of 1920 when Hughs went to Kansas City and told Interstate Cattle Loan Co. that Warren wanted pay for pasture and feed.

"Q. 8. How much, if anything, do you allow defendant James E. Warren for pasturing cattle in Oklahoma? A. $3,000.00.

"Q. 9. How much, if anything, do you allow defendant James E. Warren for pasturing cattle in Kansas? A. (*a*) For year 1920? $4512.00. (*b*) For year 1921? $2230.00. Feed for 1920 and 1921? $3345.00."

The plaintiff moved to set aside certain of the answers to special questions on the ground that they were not supported by sufficient evidence. We have examined the record and conclude that there was sufficient evidence to sustain the findings and that no error was committed in overruling plaintiff's motion.

Complaint is made of the introduction of testimony that the defendant Warren requested Homer Hughs, one of the owners of the cattle, to talk to the officers of the plaintiff relative to the defendant's bill for pasturage, and that Hughs later informed him that he had talked with the officers of the plaintiff and that the defendant's

bill for pasturage would be paid out of the proceeds of cattle remaining in defendant's possession after others were sold. Under all the circumstances we are not able to say that the court erred in admitting this testimony. The defendant had permitted cattle to be taken from his possession and sold, and it was neither improbable nor improper for Hughs, the owner of the cattle, as agent of the plaintiff, to advise the defendant that he was safe in permitting a portion of the cattle to be shipped, with the understanding that his pasturage bill would be paid out of the proceeds of those remaining.

The statute under which the defendant claims his lien, reads:

"The keepers of livery stables, and all others engaged in feeding horses, cattle, hogs, or other live stock, shall have a lien upon such property for the feed and care bestowed by them upon the same, and if reasonable or stipulated charges for such feed and care be not paid within sixty days after the same becomes due, the property, or so much thereof as may be necessary to pay such charges and the expenses of publication and sale, may be sold as provided in this act." (Gen. Stat. 1915, § 6083.)

This statute was early construed in *Case, Adm'r, v. Allen,* 21 Kan. 217, 220. The court there said:

"Now, the lien of the agister is not the mere creature of contract. It is created by statute from the fact of the keeping of the cattle. The possession of the agister was rightful; and, the possession being rightful, the keeping gave rise to the lien; and such keeping was as much for the interest of the mortgagee as the mortgagor. The cattle were kept alive thereby; and the principle seems to be that where the mortgagee does not take the possession, but leaves it with the mortgagor, he thereby assents to the creation of a statutory lien for any expenditure reasonably necessary for the preservation or ordinary repair of the thing mortgaged. Such indebtedness really inures to his benefit. The entire value of his mortgage may rest upon the creation of such indebtedness and lien, as in the case at bar, where the thing mortgaged is live-stock, and the lien for food. And while it seems essential that this should be the rule to protect the mechanic or other person given by statute a lien upon chattels for labor or material, the rule, on the other hand, will seldom work any substantial wrong to the mortgagee. The amount due under such liens is generally small,—a mere trifle compared with the value of the thing upon which the lien is claimed. The work or material enhances or continues the value of that upon which the work is done, or to which the material is furnished; and the mortgagee can always protect himself against such liens, or, at least, any accumulation of debt thereon, by taking possession of the chattel mortgaged."

The rule of *Case v. Allen* was quoted with approval in *Automobile Co. v. Dennis,* 104 Kan. 241, 178 Pac. 408. We conclude that the defendant's lien was superior to that of plaintiff.

Wilcox v. Hollar.

The plaintiff requested several instructions the effect of which would have been a directed verdict for the plaintiff. They were properly refused. We have examined the instructions submitted by the court and are of the opinion that they fairly covered all of the material elements of the case and that no error was committed by the court in refusing those requested by the plaintiff. Various other objections by the plaintiff, including those pertaining to the introduction of evidence, the refusal to admit other evidence, and the overruling of plaintiff's motion for a new trial, have been considered, but no reversible error has been found. (See *The State v. Smith,* 114 Kan. 186, 189, 217 Pac. 307.)

The judgment is affirmed.