No. 31,182.

J. C. Hoy, *Appellee*, v. Elmer Griffin et al., *Defendants*, Perry Whitham and Eunice Harsh, *Appellants*.

(22 P. 2d 449.)

Opinion filed June 10, 1933.

*E. W. Grant,* of El Dorado, for the appellants.

*R. C. Woodward,* of El Dorado, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an action in replevin by the holder of a mortgage on cattle brought against the mortgagor and the owners of the land on which the cattle were pastured, the latter claiming an agister's lien. The owner of the cattle admitted the mortgage indebtedness and offered to confess judgment.

The issue raised by the pleadings was the existence of an agister's lien of $160—the complication arising from the claim of the landowners that the mortgagor was their agent in caring for the pasture and for these and other cattle therein. A further question involved was whether or not the cattle were turned back to the owner after the close of the pasture season.

Defendant Whitham and his sister were the owners of 320 acres of land in Butler county, 80 acres of which was farm land with a dwelling and other buildings thereon. This was rented to defendant Griffin for a crop rent and he occupied the dwelling as a home for himself and family. The pasture of 240 acres was adjoining, but not included in the lease. Later Griffin, the tenant of the farm land and owner of the cattle previously mortgaged to plaintiff, arranged with Whitham to pasture his cattle on this pasture land for the season for $6 per head for the older ones, $4 for the yearlings and nothing for the calves.

The evidence shows that the owners of the land lived six miles from the farm and pasture and came to see it occasionally. The fences needed repairs. The owners furnished the posts and Griffin made the repairs. Griffin was to continue to look after the fences and the cattle of his own and others in the pasture for the pasture of four milk cows and his work horses, and was to be reimbursed for salt purchased for the cattle and water that might have to be hauled during a dry season. He hauled water twenty-five days during the season for the promised compensation of $2 per day. Two other parties had five head of cattle each in this pasture during the season. The total number of calves and all in the pasture was sixty-two head.

The pasture season closed generally sometime in October. This replevin action was commenced on December 24, and the cattle were taken by the sheriff from the feed lot adjoining the pasture on December 26. The cattle belonging to others had been taken out of the pasture prior to the time the replevin action was commenced. A demand and claim of an agister's lien for $160 was made of the sheriff by Whitham at the time and place the cattle were taken by the sheriff.

The trial court held the burden of proof was on the defendant Whitham and his sister, the landowners, to establish their claimed agister's lien. The defendants introduced their evidence in the trial before the court and a jury, and at the close of defendants' testimony the court overruled the plaintiff's demurrer thereto. At the close of the evidence offered by the plaintiff, mortgagee, the court instructed the jury, and in due time the jury returned into court its verdict for defendants and its answers to seven special questions as follows:

"We, the jury empaneled and sworn in the above-entitled cause, do, upon

our oath, find for the defendants Perry Whitham and Eunice Harsh, and as against the plaintiff, and assess their recovery in the sum of $160.

"1. Who had possession of the cattle covered by the Hoy mortgage on Thanksgiving Day, 1931? A. Perry Whitham and Eunice Harsh.

"2. Who had possession of the cattle covered by the Hoy mortgage on December 26, 1931? A. Perry Whitham and Eunice Harsh.

"3. Were the cattle covered by the Hoy mortgage ever in the exclusive possession of Griffin after the pasture season of 1931 commenced and prior to December 26, 1931? A. No.

"4. Did Griffin from time to time remove the cattle from the Whitham pasture to the premises leased by him? A. No.

"5. Did Perry Whitham or Eunice Harsh ever have the possession of the cattle covered by the Hoy mortgage after the pasture season of 1931 ended? A. Yes.

"6. If you answer question No. 5 'yes,' state in what manner they had such possession. A. Never removed from pasture.

"7. If you answer question No. 5 'yes,' state if they ever surrendered such possession prior to December 26, 1931. A. No."

The motion of the plaintiff for a new trial was overruled. Plaintiff also filed the following motion:

"Comes now said plaintiff and moves the court to set aside the verdict heretofore rendered by the jury in the above-entitled action, on the 28th day of March, 1932, and to render judgment herein in favor of said plaintiff J. C. Hoy, and against defendants Perry Whitham and Eunice Harsh, notwithstanding said verdict."

The trial court sustained the latter motion in the manner and upon the grounds as stated in the journal entry as follows:

"Thereupon came on for hearing the motion of the plaintiff for judgment in accordance with the prayer of his petition, notwithstanding the verdict of the jury and the answers to the special questions, and the court, after hearing the argument of counsel and being fully advised in the premises, finds that said motion should be and the same is hereby sustained, and that the answers of the jury to the special questions be and the same are hereby set aside, as being contrary to the evidence, and the general verdict of the jury is hereby set aside as not being supported by, and being contrary to the evidence."

The court rendered judgment for plaintiff for the possession of the cattle free from any and all claims of the defendants and against the defendants for costs. Later the trial court overruled the motion of defendants for a new trial, and from all adverse rulings the defendants appeal.

In support of the final judgment appellee claims appellants never were entitled to an agister's lien under the statutes of this state, that if they had been so entitled at one time they had waived it by the

surrender of the cattle to the owner thereof, and that the trial court was fully within its power under the facts and circumstances of the case in rendering judgment for plaintiff notwithstanding the verdict of the jury and its answers to the several special questions.

The two sections of the statutes which authorize and limit the right of an agister's lien in this state are as follows:

"The keepers of livery stables, and all others engaged in feeding horses, cattle, hogs, or other live stock, shall have a lien upon such property for the feed and care bestowed by them upon the same, and if reasonable or stipulated charges for such feed and care be not paid within sixty days after the same becomes due, the property, or so much thereof as may be necessary to pay such charges and the expenses of publication and sale, may be sold as provided in this act." (R. S. 58-207.)

"The voluntary delivery to the owner or claimant of any personal property by any person claiming a lien thereon, as provided in this act, shall be held to be an abandonment of such lien, and such lien may also be waived by special contract." (R. S. 58-215.)

The trial court, in its instructions to the jury, said that whether defendants were entitled to a lien was a question of fact, and it was a question of fact as to whether the landowners or the owner of the cattle had actual possession and control of the cattle during the time they were grazing in this pasture and until they were taken by the sheriff.

Under the statute above quoted it is not sufficient to be entitled to a lien, to furnish the pasture. Care must be bestowed upon the cattle directly or indirectly by the landowners in addition to furnishing the pasture and this possession and control must continue with them. If the cattle were turned back to their owner or if he assumed possession and control of them, the lien that may once have existed would, under the last above-quoted statute, be waived. The confusion that exists in this case arises out of the dual capacity in which the evidence tends to show the defendant Griffin to have been placed. He was in the first place the owner of the cattle and primarily entitled to the full possession and control of them. Then he and the landowners claim he surrendered that possession and control to Whitham and his sister, owners of the pasture, to have them pastured for the season at a definite amount per head for pasture, water, salt and care. And because the evidence further tends to show that he accepted employment of the owners of the pasture to keep the fences in repair, look after these cattle and others in the pasture, furnish salt and water for all of them and to be compensated for

such services by being given pasture for four cows and his work horses free of charge, reimbursed for the salt and paid $2 per day for hauling water, he became the employee or agent of the landowners. On the other hand, it is claimed he was not acting for the landowners but for himself, and therefore was always in possession and control of his cattle. Suppose instead of Griffin doing this work in looking after the cattle and the pasture, the landowners had employed an entire stranger to do this same work for this same compensation, there would be no serious question or confusion as to the possession or control of the cattle during the pasturing season, and it would not likely have been held that the hired man had such possession and control.

The following are leading cases on the question of agister's liens in which helpful distinctions are made and essentials are emphasized: *Case v. Allen,* 21 Kan. 217; *Kelsey v. Layne,* 28 Kan. 218; *Bank v. Brecheisen,* 65 Kan. 807, 70 Pac. 895; and *Cattle Loan Co. v. Warren,* 115 Kan. 21, 222 Pac. 138. But the case most nearly in point as applied to the facts in this case is that of *Loader v. Bank,* 113 Kan. 718, 216 Pac. 264. It is evidently the case which convinced the trial court that judgment should be rendered for the plaintiff notwithstanding the general verdict and the answers to the special questions. Among the findings of fact in that case made by the trial court were the following which show a wide distinction between it and the one at bar: That the owner, who was also the mortgagor, was at all times in full and exclusive possession of the stock. That the landowner not only did not have possession of the cattle at any time but'had nothing to do with keeping up the pasture fences, supplying stock with water when necessary, or caring for the stock in any respect. In the opinion the fact is also stated that the lease which reserved the pasture to the lessors provided for the pasturing of the tenant's cattle at the customary price per head and for landowners "to have a lien for payment of the sums due." Numerous other differences are to be observed by reference to the record in that case. While the general relations of the parties in the two cases are similar, yet the details are directly the opposite as to employment and compensation, which with other distinctions make the Loader case, *supra,* not one "on all fours" with the case at bar, nor decisive of the rights of the parties hereto.

Appellee insists that the verdict of the jury was not supported by evidence and that it, as well as the answers to the several special

questions, is contrary to the evidence. Isolated answers of witnesses are cited which apparently support that contention, but whether the evidence was entitled to credence or not there certainly is in the record some evidence and sufficient evidence, if believed, to sustain the verdict and the answers to the several special questions. The jury, under proper instructions, believed this testimony with reference to possession and control of the cattle being in the owners of the pasture and remaining there until disturbed by the sheriff.

The trial court in the exercise of its judicial duty and control over verdicts, general and special, apparently could not approve the verdict or the answers. Instead of granting a new trial, as is usually done in such cases, the trial court thought best to set aside the verdict and the answers to the seven questions and render judgment on the petition of the plaintiff.

The case of *Shore v. Shore,* 111 Kan. 101, 205 Pac. 1027, is cited by appellee as an authority for such action by the trial court. In that case punitive damages were awarded plaintiff when no actual damages were allowed by the jury, as shown by the answers to special questions, and the trial court set aside one of these answers and then rendered judgment on the general verdict. On appeal the judgment was reversed and it was held that defendant's motion for judgment in his favor notwithstanding the verdict should have been sustained, and it was further held—

"When reviewing a verdict or special finding, the district court acts according to its own independent judgment, and should set aside either or both when satisfied the jury has not properly discharged its functions." (Syl. ¶ 1.)

The following was said as to the duty of the trial judge in such cases in the case of *Williams v. Townsend,* 15 Kan. 563:

"It is unquestionably the duty of the district court to set aside a verdict and grant a new trial whenever the jury have manifestly mistaken the evidence. And the district courts cannot shirk their responsibility by saying that the jury are the exclusive judges of all questions of fact; for, while this is true as long as the jury have the case under their consideration, yet, when the jury have rendered their verdict, then the judge himself becomes the exclusive judge of all questions of fact; and, while he cannot reform the verdict, nor modify it in any particular, nor set it aside if it is sustained by sufficient evidence, yet, if the verdict is manifestly erroneous, he should always set it aside, and grant a new trial; and he should be controlled by his own judgment in the case, and not by that of the jury." (Syl. ¶ 3.)

Another helpful ruling on the subject of what is best to be done by the trial judge as to approval or disapproval of verdicts is *Railroad Co. v. Matthews,* 58 Kan. 447, 49 Pac. 602.

"While it is the imperative duty of the trial court to sustain a motion for a new trial in all cases where there is an utter failure to prove any essential fact necessary to support the verdict, and also where the judge is of the opinion that the verdict is clearly opposed to the weight of the testimony, yet in cases of doubt, where there is sufficient testimony to support the verdict, if the court after a full consideration of it approves the verdict and enters judgment thereon, this court will not reverse that action merely because the judge states that he doubts the correctness of the verdict and would not have found as the jury did if the case had been submitted to him as a trier of the facts. In doubtful cases, where the jury have acted fairly and conscientiously on conflicting evidence, the trial court may properly defer to the judgment of the jury and approve a verdict, even though acting on its own judgment alone it would have reached the opposite result." (Syl. ¶ 4.)

Appellee urges that this is just the same as if the trial judge had sustained the demurrer to the defendants' evidence or had given a peremptory instruction at the close of the testimony—quite true, except the fact that the triers of fact have definitely found the facts to be otherwise. Of course, the trial court is not bound to approve such findings and should not unless it can do so conscientiously, but should the judge render a judgment of an entirely opposite nature or grant a new trial? In this case the trial court overruled the motion of plaintiff for a new trial just prior to sustaining the motion to render judgment for plaintiff notwithstanding the verdict, and later overruled the motion of defendants for a new trial. It is said in 15 R. C. L. 606:

"Where there is a total absence of evidence on some material point, and it appears probable that the party has a good cause of action or defense, and the defects, if any, in ·the evidence, are largely technical and might be supplied upon another trial, a new trial and not a judgment *non obstante veredicto,* will be granted. . . . If, however, the evidence precludes any right of the plaintiff to recover, a motion by the defendant for judgment notwithstanding a verdict in favor of the plaintiff is proper and should be granted."

33 C. J. 1183 gives the following as the rule in such cases:

"A judgment *non obstante veredicto* must be based solely upon matters appearing upon the record. It cannot be granted upon affidavit or evidence, but only on the face of the pleadings. . . . A judgment *non obstante veredicto* must be granted, if at all, upon the record, and the evidence cannot be looked to in determining a motion for such judgment. Such a judgment cannot be rendered merely because the verdict is against the weight of the evidence, although there are intimations that such a judgment may be entered upon undisputed evidence ˙or where the verdict is not sustained by any evidence whatever. The proper remedy for a wrong or mistaken verdict on the facts is by motion for a new trial, not by motion for a judgment *non obstante veredicto."*

"The power of the court to grant a motion for judgment notwithstanding the verdict is no broader than its power to direct a verdict, and it cannot be exercised where there is a conflict in the evidence, although the conflict is such that the trial court would be justified in granting a new trial notwithstanding it, as the motion must be based upon such a state of facts as will warrant the court in granting it without trespassing on the province of the jury to be judges of all questions of fact in the case." (*Hunt v. United Bank & Trust Co.*, 210 Cal. 108, syl. ¶ 12.)

"There being evidence from which the jury were warranted in finding for the plaintiff, it is error to enter a judgment for the defendant *n. o. v.* . . ." (*Fleming v. Buerkli*, 159 Wash. 460, syl. ¶ 2.)

"If there is any evidence to support a material finding, it cannot be stricken from the special verdict or a directly opposite one substituted for it. If a finding is against a decided preponderance of the evidence, the remedy is by motion for a new trial." (*Ohlweiler v. Lohmann and others*, 82 Wis. 198, syl. ¶ 1. See, also, *Sheehy v. Duffy and another*, 89 Wis. 6.)

". . . If, after a careful study of the evidence, it appears that there is substantial evidence to support every essential element of plaintiff's case, the verdict of the jury cannot be set aside, and judgment notwithstanding the verdict is erroneous." (*Landers v. Crescent Creamery Co.*, 118 Cal. App. 707, syl. ¶ 3.)

While the burden of proof was properly placed on the defendants in this case, yet, with such answer as was filed by defendants, the pleadings were not such as would support a judgment for plaintiff on motion, and with evidence, if believed, sufficient to support the verdict and the answers to the special questions the duty of the trial court would seem to have been to grant a new trial.

"The fact that the jury are the exclusive judges of all questions of fact submitted to them does not justify the judge of the trial court in declining to examine the sufficiency of the evidence upon which the verdict rests, when it is challenged by a motion for a new trial; and whenever it is manifest that the jury have found against the clear weight of the evidence, and that the party asking for a new trial has not in all probability had a fair trial nor received substantial justice, it is his imperative duty to set the verdict aside and grant a new trial." (*Coal and Mining Co. v. Stoop*, 56 Kan. 426, syl., 43 Pac. 766.)

We think the trial court went further than can be justified by approved precedents in rendering judgment for plaintiff notwithstanding the verdict and answers after having overruled the motion of the plaintiff for a new trial, and for that reason the judgment rendered on the last motion of plaintiff must be reversed and the cause remanded for further proceedings after the setting aside of the general verdict and the answers to the several special questions as being

contrary to the evidence. This the trial court did before attempting to render judgment for plaintiff notwithstanding the verdict and the answers, and then, as the journal entry shows, proceeded to render judgment for the plaintiff and against the defendants. The verdict and answers are as effectively disposed of by the trial court in setting them aside on this motion as if done in the usual way by sustaining a motion for a new trial. With the verdict and answers set aside by the trial court, which it had a perfect right to do, there is nothing left on which to base a judgment for either party, and the only recourse is to grant a new trial, as should have been done under the previous motion, when the trial court thought the verdict and answers were contrary to the evidence.

Appellant indulges in a severe criticism of the action of the trial court, which we not only disapprove but censure. The similarity of the outline and the surroundings of the Loader case, were sufficient to suggest it as a logical precedent, notwithstanding the widely different details.

The judgment is reversed and cause remanded with directions to grant a new trial.