MICHAEL AARON *et ux., Appellees,* v. THE MISSOURI AND KANSAS TELEPHONE COMPANY, *Appellant.*

No. 16,872.

SYLLABUS BY THE COURT.

1. WRITTEN CONTRACTS—*Construction—Court or Jury.* The interpretation of a written contract introduced in evidence is an exclusive function of the trial court; and the relations of the parties, as well as their duties and obligations under the contract, should be determined by the court and embodied in its charge to the jury.

2. ——— *Duties of Parties to Each Other and Liability to Employees.* Where, under a contract, one telephone company places some wires upon the poles of another company, and an employee of the former is killed while stripping the wires of his own company from a defective pole belonging to the other company, the duty of the owning company to the leasing company and its employees in respect to maintaining the poles in a safe condition for the employees of the leasing company, and its liabilities for injuries sustained by such employees while working upon the poles, are matters of law for the determination of the court; and to leave the jury to determine both the law and the facts is reversible error.

Appeal from Leavenworth district court. Opinion filed February 11, 1911. Reversed.

*J. W. Gleed, D. E. Palmer,* and *J. L. Hunt,* for the appellant.

*John T. O'Keefe, Lee Bond,* and *Malcolm N. Mc-Naughton,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The appellees, Michael Aaron and Jeanette Aaron, recovered a judgment for $10,000 against the appellant, the Missouri and Kansas Telephone Company, for the violation of its duty to their son, Walter, through which he lost his life. The action was brought against the appellant and the Delaware Mutual Telephone Company, of Lansing, but before the case was submitted to the jury the Delaware Mutual Telephone Company was dismissed from the case. In the petition it was alleged that Walter Aaron was an employee of the Delaware company, which, under contract with appellant, had two wires upon the poles of appellant, and that it was the duty of appellant to have proper poles and maintain them in a safe condition for its own operatives as well as those of the Delaware company who found it necessary to climb and work upon them; that appellant had planted new poles along the line and had removed its own wires from the old and attached them to the new poles; that Walter Aaron came along afterward and was transferring the two wires of the Delaware company from the old to the new poles, and that when he had climbed an old pole for that purpose and had stripped the wires from that pole, to which he was strapped, it broke and fell, crushing and killing him. It was further alleged that the pole was in a low, wet place, had rotted below the surface of the ground and was unsafe for use, and that if appellant, who knew or should have known of its unsafe condition, had done its duty by substituting a sound pole for the defective one, or by bracing it so as to make it secure, the injury would not have been in-

flicted. It was also alleged that the pole rotted from the center, and that there was nothing on the outside to indicate to the deceased that the pole was defective and that no warning or notice of its condition came to his knowledge.

The answer of the appellant was a general denial, and a special denial that appellant was under any obligation to the Delaware company to maintain its poles in a condition to be safe for the operatives of that company; and it further alleged that the deceased came to his death through his own want of care.

After the evidence of appellees had been introduced they dismissed the action as to the Delaware company without prejudice.

The testimony included two written contracts between appellant and the Delaware company relating to an interchange of business, the connections to be made, the use of telephones and switchboards, the maintenance of lines, the placing of the wires of one on the poles of the other and fixing the compensation for such use, a provision releasing one from loss or damage caused by wires or fixtures, and containing other stipulations as to the duties of each company and its obligations to the other.

In submitting the case to the jury the court instructed "that if you believe from the evidence in this case that it was the duty of the Missouri and Kansas Telephone Company, under a contract with the Delaware Mutual Telephone Company, to maintain the line of poles in question, including the particular pole in question, in a reasonably safe condition for the linemen of the Delaware Mutual Telephone Company to climb and operate upon; that it failed so to do, and because thereof the death of Walter Aaron was caused, without fault on his part, then I instruct you shall find for the plaintiffs," etc. In another instruction the jury were told, in effect, that if they found it was the duty of the appellant to maintain the poles in a rea-

sonably safe condition for the operatives of the Delaware company, and also found that the deceased was working for the Delaware company, and if the appellant did not maintain the poles in a reasonably safe condition for such operatives, by reason of which the deceased lost his life, the appellant was guilty of negligence. Another instruction of like import left the jury to interpret the contracts and to determine from them what the duty of appellant was and whether it had been violated.

The duty of appellant to the Delaware company in respect to the maintenance of the poles, including the one which fell, depended mainly upon the terms of the contracts between these companies. The contracts were in writing, and their meaning and effect were questions of law, exclusively within the province of the court. To send the jury to a written contract to find the respective duties and obligations of the contracting parties was to leave the jury to decide the law as well as the facts. It was the province of the jury to determine all questions of fact involved in the case, after the court had advised them as to the governing rules of law and instructed them how to apply those rules to the facts brought out in the testimony. To impose on the jury the task of interpreting a contract and of determining the duty and responsibility of appellant under the contract is to require them to perform a function which belongs to the court alone—a duty which it can not surrender or evade. In *Bell v. Keepers,* 37 Kan. 64, it was ruled that "when a written instrument is admitted in evidence, it then becomes the duty of the court to construe and determine its legal effect, the relation of the parties thereto, and to include such determination in the instructions to the jury." (Syl. ¶ 2; see, also, *Brown v. Trust Co.,* 71 Kan. 134.)

The duty of appellant to one employed by and working for another company is not only a matter of law,

but it is one of vital consequence in the action.  The instruction was little less objectionable than would have been one that if the jury believed the appellant was responsible for the injury and death the plaintiffs were entitled to recover.  The instructions required the jury to cover the entire field, including the province of the court, and left them to determine both the law and the facts.  It has been held that the failure of the court to define the issues in a case and state them to the jury is error, and likewise it has been decided that to send the jury to the pleadings to learn the issues or contentions of the parties is reversible error.  (*Railroad Co. v. Eagan,* 64 Kan. 421; *Stevens v. Maxwell,* 65 Kan. 835; *Railroad Co. v. Dalton,* 66 Kan. 799.)  The duty of the court to define to the jury the issues made by the pleadings is no more imperative than to determine the questions of law arising in the case and to state them to the jury.  It is in fact a greater departure from good practice to leave the jury to interpret written contracts and determine their effect on the relations and obligations of the parties than to leave them to ascertain the effect of the pleadings or the issues which they present.

Another instruction complained of is:

"You are further instructed that it is the duty of the master to his servant to exercise ordinary care, having regard to the hazards of the service, to provide the servant with reasonably safe working places, machinery, tools and appliances, and to exercise ordinary care to maintain them in a reasonably safe condition of repair."

As the Delaware company, the employer of the deceased, had been dismissed from the case, and the relation of master and servant did not exist between appellant and the deceased, this instruction was inappropriate and may have been misleading.  In answer to special questions the jury found that deceased was working for the Delaware company, and that the

wires he was removing from the poles were owned by that company. It was also found that he was not in the employ of the appellant, and was not receiving any part of his wages from appellant. There was no basis in the evidence for treating the appellant as the master of the deceased, and no reason for laying down the rule of liability that obtains between master and servant. The instruction would naturally suggest to the jury that the relation of master and servant did exist between appellant and the deceased, and, if not, that appellant owed the same duty to the employees of the Delaware company that it owed to its own employees. Since the duty of appellant to deceased was not stated to the jury, and since a rule of duty applicable to other parties and not applicable to appellant was stated as if it did apply, the instruction can not be regarded as harmless.

For the error of the court in submitting the case to the jury the case is reversed and the cause remanded for a new trial.