No. 25,204.

THE STATE OF KANSAS, *Appellee,* v. V. E. CREIGHTON, *Appellant.*

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*False Reports—Prosecution—Sufficiency of Information.* In an information, defendant, who was the president of a bank, was charged with making a false report of the financial condition of the bank to the bank commissioner and the public by falsely reporting that the assets of the bank, among other things, consisted of specified assets in the specified amounts of the loans and discounts, the legal reserve, the undivided profits, and the interest received account, whereas each was for a much less sum than was reported without stating the amount that each was less than was stated in the report. As to the bonds borrowed account, the overdrafts in the bank and the loans to stockholders, the amounts of each were specifically alleged and it was charged that each was of a much greater amount than was reported, but how much greater was not alleged. A motion to require a bill of particulars and also one to quash the information for indefiniteness were denied. *Held,* not to be error.

2. TRIAL—*Province of Court—Construction of Written Agreement.* A feature of the case upon which the falsity of the report depended was a written agreement, the interpretation of which was the exclusive function of the court, and should not have been submitted to the jury.

3. BANKS AND BANKING—*False Report—Criminal Prosecution—Evidence.* The evidence produced in support of the second count of the information is examined and held to be sufficient to support the verdict thereon.

4. SAME—*False Report—Burden of Proof—Intent—Instructions.* Instructions relating to burden of proof and also intent held to be without prejudicial error.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed May 9, 1925. Affirmed in part and reversed in part.

*W. F. Lilliston,* of Wichita, *W. L. Cunningham,* and *D. Arthur Walker,* both of Arkansas City, for the appellant; *R. R. Vermilion, Earl W. Evans,* and *Joseph G. Carey,* all of Wichita, of counsel.

*C. B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, and *C. H. Quier,* county attorney, for the appellee; *J. A. McDermott,* of Winfield, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: V. E. Creighton was prosecuted and convicted upon a charge of making false statements and reports to the bank commissioner as to the financial condition of the Traders State Bank of Arkansas City, of which he was president and managing officer,

. and also as to the value of certain assets in the bank. He appeals from the judgment of conviction and asserts that there was error in the rulings as to the sufficiency of the information in the admission and effect of evidence and in the instructions given to the jury.

The information contained two counts, the first of which charged in substance that the defendant made false statements to the bank commissioner and the public; that the bank at the close of business on December 31 had among its assets certain loans and discounts amounting to $644,220.38, whereas the assets were of a much less value than the amount stated; that the legal reserve of said bank amounted to $57,513.36, whereas the *bona fide* legal reserve did not amount to that sum, but was of a much less sum; that the undivided profits of the bank on that date amounted to $6,486.20, whereas the amount of undivided profits was of a much less sum, in fact had no legitimate undivided profits at the time; that the interest received account of the bank on the date was $33,792.95, and it is alleged that the interest account was a sum much less than that reported; that the bonds borrowed account of said bank amounted to at that time the value of $45,300, and it was charged that this account did not amount to that sum, but was of far less value. That the overdrafts in said bank amounted to $1,582.49, whereas the overdrafts at that time were for a much greater amount than that reported. That the loans of the bank to its stockholders amounted to the sum of $36,-786.34, whereas a much larger sum had been loaned to the stockholders than the amount stated.

It is then alleged that these false reports made by the defendant were with the intent and for the purpose of deceiving the bank commissioner, the customers of the bank and the public generally as to the financial condition of the bank.

In the second count it is charged that the defendant made a false report to the bank commissioner concerning the financial condition of the bank at the close of business January 30, 1922, in that a certain note purporting to have been executed by Letha L. Creighton for $5,251.92 was a valid and subsisting obligation to the bank, and that it was of the value of the amount stated on its face, whereas the note was worthless and was not a *bona fide* and subsisting asset of the bank, and also by stating and declaring in his report that a note executed by J. N. Day in the sum of $6,600 was a valid and subsisting obigation of Day to the bank, and worth its full face value, whereas the truth was that the note was worthless and was not a

valid and *bona fide* asset of the bank. Also by falsely stating and declaring that a certain note purporting to have been executed by Belle Smothers in the sum of $3,675 was a valid and subsisting obligation of Belle Smothers to the bank, and was a *bona fide* asset, whereas it was not the obligation of Belle Smothers to the bank in that amount but only the sum of $1,500 and was not a *bona fide* asset of the bank for its face value, and further by reporting and declaring that a note purporting to have been executed by George Creighton estate, by V. E. Creighton, administrator, for the sum of $3,800, was a valid and subsisting obligation of the estate of George Creighton to the bank, and that the same was of the value of the amount stated on its face and a *bona fide* asset of the bank, whereas in truth the note was not the obligation of the estate of George Creighton and that V. E. Creighton in his capacity as administrator had no authority to execute or deliver a note on behalf of the estate and that the note was not a *bona fide* asset of the bank.

As to the first count of the information the defendant moved for an order requiring the prosecution to file a bill of particulars, stating in detail in what respect the report made to the bank commissioner as to its financial condition at the close of business December 31, 1922, was untrue with reference to the loans and discounts of the bank, setting out particularly what loans and discounts were included in the report and what should have been included therein and the same with respect to the legal reserve, undivided profits, interest received, bonds borrowed, and the items in the overdrafts account, which had not been included therein, and likewise what loans to stockholders, as to what stockholders were omitted from the report, but this application was denied.

This was followed by a motion to quash the information on the ground that the offenses were not charged with such a degree of certainty as to warrant the court in pronouncing judgment upon conviction and that the facts stated therein did not constitute a public offense. This motion was denied.

It is contended that the denial of the motion for a bill of particulars and of the motion to quash the information on the grounds of indefiniteness and uncertainty was error, in that the defendant was not fully informed as to the matters which he was required to meet in making his defense. While the prosecution in its charge did not state in detail the actual condition of each account falsely reported, the charge was specific as to the amounts reported and it was

alleged that each was false. It was alleged that the loans and discounts, the legal reserve, the undivided profits and the interest received account, the amounts of each being stated, were largely and falsely overstated. There were stated amounts in the report as to bonds borrowed, overdrafts, loans to stockholders, and it was charged that they were falsely understated. How much each of the reported amounts were overstated or understated, was not alleged. To have given in detail the exact state of each account and the items that entered into each, would have made it necessary to set out much of the contents of the bank books and a large part of the evidence in the case. That would have been impracticable and we think unnecessary. If the amounts reported are shown to be false, how much they may be more or less than should have been reported, is not of great importance, as the offenses are made out by the state when the reports are shown to be false and to have been made with intent to deceive. How far the departure from the truth the report may be, in this respect, does not affect the character of the offense nor necessarily lessen the punishment to be adjudged. Again it may be said that the defendant was quite well informed as to the nature of the offense, and the facts upon which the state would rely, by the evidence introduced at the preliminary examination. Much of the evidence produced at the trial had been presented at the preliminary examination, enough at least to give the defendant information as to the theory and claims of the prosecution. We think that no material error was committed in the denial of the motions mentioned.

There is a complaint that the court failed to instruct the jury that the burden of proof to support the charges was upon the state. The instructions were not as specific in this respect as they should have been, but the jury was instructed that the defendant was presumed to be innocent upon the first count until proven guilty by the evidence beyond a reasonable doubt. Another instruction was to the effect that the state must show beyond a reasonable doubt that statements alleged to be false must have been made wilfully and knowingly and with intent to deceive some person or the public as to the condition of the bank. In respect to the second count the jury was advised that it must be shown beyond a reasonable doubt that the defendant wilfully and with intent to deceive made a false statement and report as to certain notes and assets of the bank that were described. In view of the instructions given it cannot be said

that prejudicial error was committed in not more specifically instructing as to the burden which rested upon the state.

Complaint is made of the following instruction in which it is said:

"It is claimed by the state that in the different items included in the statements of the condition of the bank on December 31, 1921, regarding its assets, there was listed or used as such assets different Liberty bonds, notes, for stock, sold but not delivered. And in this connection you are instructed that the right of the bank to use government bonds of its patrons as assets of the bank, and the notes or cash delivered to it for stock, sold but not delivered, would depend entirely upon the contract which the bank had with the owners of any such bonds or with the purchasers of such undelivered stock at the time of making such statement. If at the time the owners of the bonds that were delivered to the bank had an agreement with the officers of the bank of which the defendant was an officer that such bonds might be used by the bank in any manner it saw fit, then the bank would have the right to use such bonds as a part of its assets. But if such bonds or any part thereof was placed in the banks, by the owners of such bonds and were so held at the time of the statement complained of simply for safe keeping or for the purpose only having them exchanged for other bonds, then the bank would have no right to use them as assets of the bank."

Then after stating the rule as to cash or notes given to the bank by purchasers of prospective stock, the instruction proceeded:

"Whether or not the bonds of the patrons of the bank, or the notes or money derived from the sale of stock was intended by the owners thereof to be turned over to the bank to use as they saw fit is a question you must determine from all the facts and circumstances in the case."

The defendant was charged not for the misuse or embezzlement of borrowed bonds, but for a false report to the bank commissioner that the bonds borrowed account amounted in value to $45,300, whereas it was of the value of a much less sum. The prosecution did not claim or attempt to show that the borrowed bonds were assets not reported but rather that they were liabilities not fully or truthfully reported. In the instruction the court charged the jury as to the right of the bank to use the government bonds of its patrons although the defendant was being tried for a false report as to the bonds in its possession which the bank had borrowed. A more serious matter in this connection is the submission to the jury of the written contracts with the parties from whom the bonds were borrowed. When the bonds were borrowed there was attached to some of them a memorandum agreement with the lenders which recited the receipt by the bank of the bonds, "for which we agree to pay a like amount in bonds of the same issue or cash at our

option on the surrender of this certificate." Other agreements with borrowers were that temporary bonds might be exchanged for permanent ones and still others that the bonds given to the bank might be replaced by other bonds of like issue and denomination. It appears that amounts of these bonds were sent to Kansas City banks for which the defendant's bank was given credit in the sight exchange account of the latter with the Kansas City bank. The effect of these agreements under which the bonds were received by the bank was a question for the determination of the court, and should not have been submitted to the jury. It has been decided that:

"The interpretation of a written contract introduced in evidence is an exclusive function of the trial court and the relations of the parties as well as their duties and obligations under the contract should be determined by the court and embodied in its charge to the jury." (*Aaron v. Telephone Co.,* 84 Kan. 117, syl. ¶ 1, 114 Pac. 211.)

Under the agreement that the bank might treat the bonds as a cash deposit or pay for them in cash it was not required to return the identical bonds borrowed, and it is clear that such a loan was more than a bailment. It was at liberty to sell the bonds or otherwise dispose of them and pay cash to the lender for them when the certificates were surrendered. Likewise it could meet the terms of other agreements by delivering to the lenders other bonds of like issue and denomination. What interpretation the jury may have placed on these written agreements, no one can tell. It was the exclusive province of the court to construe them and to instruct the jury as to their effect upon the rights of the parties and the duties of the defendant in respect to their use or disposition and as to how they should be accounted for in the report. If the bank was entitled to treat the bonds as a cash deposit and had sold them, it would not be required to report them as borrowed bonds, but of course the proceeds of them should have been reported as a part of the appropriate account. We think the error in the instruction is sufficiently material to compel a reversal of the judgment on the first count of the information.

As to the second count there is an assignment of error as to an instruction given relating to the intent to deceive the public. It was charged in the information that the report as to certain assets was false and made with the intent to deceive the bank commissioner and two of the deputies that were named. In the instruction the

jury were told that before they could find the defendant guilty they must find from the evidence beyond a reasonable doubt that the defendant made a false report with intent to deceive the bank commissioner or some one of the public. The statute provides that the making of a false report "with the intent to deceive any person as to the condition of such bank shall be deemed guilty of a felony," etc. (R. S. 9-118.) The "any person" mentioned in the statute would be included in the public, but strictly speaking the intent to deceive was definitely applied to the bank commissioner and his two deputies in the information, and the public was not included in it. However, the error in broadening of the charge cannot be regarded as material since the verdict of the jury is specific in finding the defendant guilty of making a false report to the bank commissioner and his deputies with the intent to deceive them. Since the finding confined the making of the false report to the bank commissioner and his deputies as charged in the second count of the information, no prejudice was suffered from the reference to the public in the instruction.

The court denied a request of the defendant to withdraw from the consideration of the jury the evidence upon charges in the information that a false report had been made by the defendant as to the J. N. Day note, the Creighton estate note, the equity in the bank building, and the J. P. Tighe note, contending that the evidence did not show these to be invalid assets of the bank as charged and that error was committed in the refusal of the requests. As to the Day note it appears that one Cornell was the owner of a bakery, and had borrowed money from the bank, and when he failed in business the bakery was taken over by the bank for his debt. The bank undertook to sell the bakery to Day and it was arranged that he should run it for sixty days on a certain basis and in the meantime to decide whether or not he would buy it. The agreement which was in writing provided that Day should execute a note for $6,600 upon the condition that if at the end of sixty days he should decide the bakery could be run at a profit the agreement would be canceled and that he would assume the payment of the note, but that if he did not decide to buy the bakery, the bank would return the note to him. After a test he concluded he could not run the bakery profitably and would not buy it. The bank then requested him to continue to run it on the same basis for a time while the bank was endeavoring to sell it to another.

This he did and in the meantime two renewals of the note were made. Under the agreement the Day note was mere accommodation paper and as between the bank and Day it was not a valid obligation of Day to the bank as the report of the defendant to the bank commissioner indicated. The testimony as to the arrangement was in some conflict but this was a question for the jury and under the testimony no error was committed in the refusal to withdraw the Day note, reported as an asset from the consideration of the jury.

In respect to the Creighton estate note, it was charged in the information that the defendant reported that a certain note purporting to have been executed by George Creighton estate by V. E. Creighton, administrator, for $3,800, was a valid and subsisting obligation and asset of the bank and was of the value stated on its face, whereas it was not an obligation of the estate and that defendant as administrator of the estate had no authority to execute or deliver it and therefore it was not a *bona fide* asset of the bank. That note which was introduced in evidence was shown to have originated in one executed November 8, 1919, by Letha L. Creighton for $1,776.25; that $1,750 of the proceeds thereof was placed to the credit of Zoe McCaleb, and $28.25 thereof went to interest account. On May 19, 1919, the note was renewed for $1,750, but it was signed by the defendant alone as maker and the defendant then paid $25.20 as interest on the note. It was again renewed on October 28, 1919, with Letha L. Creighton as maker. In a later renewal, a note for $2,050 was added to it making the amount $3,800. The added note of $2,050 purported to have been executed by George Creighton and its original was one made by the defendant on January 5, 1920, and $2,000 of the proceeds was taken out of the bank by a cashier's check, and paid to one Hodge, and $20.75 of the amount to interest paid by defendant. The $3,800 note comprising the two items was signed by the Estate of George Creighton by V. E. Creighton, administrator, on July 12, 1920, and it was placed in the bank as a part of its loans and discounts. It was renewed with the same signature on September 8, 1920, for the same amount and again renewed in the same form on January 12, 1921, and it was reported by defendant as a valid asset of the bank of its face value. Testimony was offered tending to show that the probate court having jurisdiction of the estate, had never authorized the borrowing of money for the estate from the bank or from any other source and while the defendant testified as to his handling of the estate and its

condition, he did not testify that authority had been given by the courts for the loan or that it was authorized under the provisions of any will made by the deceased. In view of the history of the note it cannot be said that there was a total lack of evidence to sustain the charge of the state respecting it.

Another of the complaints is that the court did not withdraw from the jury the evidence relating to the charge that a false report had been made by the defendant as to the equity on the bank building held by the bank. The bank contracted for the purchase of the building, agreeing to pay $50,000 for it and did pay $25,000 upon the purchase, but no entry was made on the books of the bank of its indebtedness for the unpaid balance. On July 19, 1920, the building account was debited with $3,000 and this amount was credited to undivided profits. On October 31, 1921, an item of $2,000 was debited to the building account and there was evidence tending to show that some notes were taken out of the loan account and the amount of them charged to the building account, and the excess of the loans, $37, was credited to undivided profits. A payment of $12,600 was made upon the building account and carried as a cash item in the teller's drawer for months, but it was never carried to the building account nor was it entered in the ledger. This credit was derived from four notes made by four directors of the bank, each for $3,000 and an assignment was made to each director of a three-fiftieths interest in the building. No interest was paid on these notes nor were the directors given credit for the proceeds of the same, and the notes remained in the bank until the alleged false report was made. The report was that the bank had an equity in the building of $30,000, but did not state that notes were carried to the loans and discounts account nor were they charged to the undivided profits account or to any other account upon the liability side of the ledger. It is said that the evidence was not competent proof, but as the building account and the undivided profits were challenged the evidence as to the transactions was admissible. The facts brought out tended to prove that a full and true report of the conditions of the bank had not been made in respect to these accounts.

The refusal to strike out the evidence as to the J. P. Tighe note is also the subject of complaint. The original of that note was one signed by George Creighton on April 24, 1918, the proceeds of which went to the account of Zoe McCaleb. A credit of $500 was placed

The State v. Creighton.

on the note on July 12, 1918, and this was shown to have come from V. E. Creighton and company, later it was renewed for $500 and renewed on January 5, 1920, by the Savings Investment Company by V. E. Creighton, the defendant, as secretary, for $4,500. It was renewed in the same form on April 20, 1920, and again on January 11, 1921, as the personal note of V. E. Creighton, the defendant. It was renewed June 24, 1921, by the defendant personally and the same day transferred to a bank at Geuda Springs, and the account of that bank was charged with $4,384.47, and the balance, $115.53, was debited to the interest account. The note was returned to the bank for collection and it was taken up by the substitution of the note of A. E. Allard, $1,150, and the J. P. Tighe note for $2,567, and a check of V. E. Creighton and company for $875. The proceeds of the Allard note did not go to Allard, but were placed to the credit of the Geuda Springs bank, and $25 credited to the interest account. The Tighe note for $2,567 appeared in the loan account, but the proceeds were not placed to his credit but were disposed of by placing $2,500 to the credit of the bank at Geuda Springs, and $67 to the credit of the interest account. The three credits of $1,125, $2,500 and $875, made up the amount of the defendant's note for $4,500. Allard testified that he gave his note to the bank without consideration and as an accommodation, that when the interest became due the defendant advanced the money on three occasions, to pay the same, $250 at one time, $200 at another time and at a later time $100. Defendant testified that this note went to take up one of the obligations of the bank. In his testimony the defendant said that for the Tighe note he gave Tighe his personal note. The testimony as to that note was very slight, but in view of the fact that it was linked up with the Allard note in the mutations of the transactions, it cannot be said that the testimony was of no value. It may be presumed that the jury gave it no more consideration or weight than it was entitled to. We think the refusal to withdraw it from the jury cannot be regarded as material error.

Error is assigned on the ground that the court did not instruct more specifically as to the intent to deceive, but we think the instructions given to the effect that to convict the defendant the jury must find that he made the false statements wilfully and knowingly with intent to deceive the parties named in the information, practically covered the subject of intent. A false statement knowingly

made to deceive fairly implies a purpose to deceive and our conclusion is that no error was committed in that respect.

In the arguments other transactions were discussed, but we have examined all the assignments and questions discussed in defendant's printed brief and the decision is that the conviction on the second count must stand, but that the judgment on the first count must be reversed.