No. 26,547.

CHARLES F. FERGUSON, *Appellee*, v. DONALD L. STEWART, *Appellant*.

SYLLABUS BY THE COURT.

1. SEDUCTION—*Action by Parent—Sufficiency of Evidence—Corroborative Evidence—Nonprejudicial Rejection of Evidence—New Trial.* In an action for damages for seduction, the proceedings considered, and *held:* (*a*) The evidence was sufficient to sustain the verdict and judgment. (*b*) There were other evidentiary facts and circumstances sufficiently corroborative of the girl's story. (*c*) The defendant was not substantially prejudiced by the rejection of evidence. (*d*) It was not error to deny a motion for new trial based upon newly discovered evidence which would have impeached or discredited the plaintiff's principal witness (the debauched daughter).

2. SAME—*Trial Generally.* Various alleged errors considered and held not to be of substantial merit.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed November 6, 1926. Affirmed.

*T. A. Moxcey,* of Atchison, for the appellant.

*O. P. May,* of Atchison, for the appellee; *W. P. Waggener* and *J. M. Challiss,* both of Atchison, of counsel.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages for the seduction of plaintiff's daughter. Plaintiff prevailed and the defendant appeals.

Sarah, the plaintiff's daughter, was twenty years of age at the time of the alleged happenings. The defendant, Doctor Stewart, residing and practicing medicine at Atchison, was forty-four, married, and living with his wife. Sarah had come to Atchison about 1919 to attend school. She lived with other families for two years while attending school, afterwards working as a domestic for two years, and was so working at the time of the acts complained of. Doctor Stewart had come to Atchison about 1918. He practiced in the Ferguson family from 1919 on, and attended Sarah's mother in confinement in September, 1923. He had doctored Sarah for grippe and pneumonia in 1919, and thereafter had been consulted by her for irregular or delayed menstruation. She visited his office sometimes with her mother, sometimes alone, and sometimes with some girl

Appeal and Error, 4 C. J. pp. 771 n. 58, 835 n. 67, 1014 n. 34, 1017 n. 49, 1018 n. 58; 2 R. C. L. 254. New Trial, 29 Cyc. pp. 918 n. 5, 919 n. 6; 20 R. C. L. 294. Seduction, 35 Cyc. pp. 1319 n. 34, 1320 n. 40.

friend. During such time the doctor treated her also for lung trouble and weak heart. She testified, in part, substantially as follows:

"Went to Doctor Stewart's office for treatment for irregularities in March, 1923. Was there again April 21 (same year) . . . between six and seven o'clock in evening, and was the last one he treated that evening. He did not give me any prescription; said I was all right; his office is on second floor 507½ Commercial street, and consists of a waiting room and two smaller rooms, one a consultation room and one where his desk, etc., is. These two small rooms face the street and one has couch in it. . . . Told him I wanted a treatment for my irregularities, and he said I was all right, and he said let's go to bed, and I said I was afraid to, and he walked out and turned out the light and came up and we had sexual intercourse. The next time I was at his office was May 25, 1923; was there then on account of heart. Gave electrical treatment.. . . . Following defendant's suggestion again had sexual intercourse. He said I should know I would not get into trouble with a doctor. Was there in June for malaria; got prescription. . . . Next in July, for irregularities; got prescription; he said let's go to bed, and I said I wanted medicine. No intercourse had then. Was next at his office in August for irregularities. My last period had been May 2. He said I was all right. Next time I saw him was September at my home; came to lance an abscess in vagina. Next time I saw him was September 21 at his office; I told him then I felt movements; he then told me my condition; said I was pregnant; I said he was the father, and he said he could make arrangements in Topeka or Leavenworth and I could go and it would not cost me anything and I would have protection; I next saw him at his office October 11. He said he had arrangements for me to go to Kansas City. Next saw him at his office October 27; told him I was ready to go; and he said all right, the arrangements were made; he said he would call Doctor Davis and have him meet me; he told me to tell my mother it was some stranger, whose whereabouts I did not know. And told me not to call his name as it would cause trouble with his wife; he gave me a paper at that time, a letter to Doctor Davis."

The letter, on defendant's letterhead, dated October 30, reads:

*"Dr. A. Porter Davis, Kansas City, Kan.:*

DEAR DOCTOR—This introduces Miss Sara Ferguson, the patient to whom I referred to when talking to you recently. She is from a good family and will enter the institution along the lines you suggested. She is a very deserving girl and perfectly honest. Things may be a bit strange to her at first, but I assured her that she will be fully protected.

Very respectfully,      D. L. STEWART, M. D."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"I was supposed to go October 30. He said it would not cost me anything. I had told my mother about it on October 13; she did not make any objection to my going; I did not tell my father until November 2. . . . When Doctor Stewart gave me this letter I asked him for my railroad fare, and he said it would not be very much and that I could pay that. . . . Mother told father; my folks then objected to my going. On February 8, 1924, I gave

birth to a child, born dead; weighed 11¾ pounds. (Witness identified a picture of child, also identified containers of prescriptions given; two of which were for douches.) I used them with fountain syringe. I did not have intercourse with him at any other times; nor with anyone else."

The defendant complains that plaintiff's case rested entirely on the uncorroborated testimony of the complaining witness.

There was testimony which may be said to have fairly and reasonably corroborated her story. The prescription bottles and boxes, two of which were for douches, testimony that defendant had made digital examinations of the girl's vagina, and that he had been treating her for several years for irregularities, indicated a more or less confidential relation existing between them. The testimony of her father and mother that she stated to them that Doctor Stewart was the father of her child, immediately upon discovery of her condition, was a circumstance fairly to be considered by the jury, as was also the letter of introduction which the defendant gave her for presentation to Doctor Davis in Kansas City. Likewise two pictures of the dead child claimed by the plaintiff to be a good image of Doctor Stewart, which were submitted to the jury. The baby was large, weighing 11¾ pounds. The defendant is a large, tall, robust, rugged man, weighing over 200 pounds, having a plump face and distinguished features, while one Fred Taylor, upon whom the defense endeavored to cast the blame for Sarah's condition, was a small, slender boy, with slender face, weighing about 125 or 130 pounds. Sarah was likewise small and slender.

The defendant contends that the court erred in excluding certain of his testimony, as follows:

"And she said she could not get the money, as she said she and her mother were trying to keep it a secret from the father; and I said if you do not want to tell Charley, sometimes they let these girls come there and work their way through, and I do not know if they do in Kansas City, but they do in Topeka; and they decided they would not go to Topeka, as they were too well known there, and thought Kansas City would be a better place, and I said I would see Doctor Davis about work there as a maid; and I went down there, but not specially—I had Will Mitchum's wife there—and I saw Doctor Davis and told him about this girl, and said she is from a good family, and they have no money, and what about working her way through."

A motion by plaintiff to strike out was allowed, but plaintiff contends it applied only to the last three lines, i. e., what the defendant "told Doctor Davis." Even if the defendant is correct in that the entire quoted paragraph was stricken from consideration of the jury (a matter about which we are necessarily in doubt), the testi-

mony was not of sufficient moment to prejudicially affect the defendant's case. Besides, it appears that the defendant subsequently testified fully concerning his version of what was said in reference to the Kansas City arrangement.

"It is a general rule that a party is not harmed and cannot complain of error in the exclusion of certain evidence, when the same, or substantially the same evidence is subsequently admitted." (4 C. J. 1014.)

"Error in rejecting competent evidence is not prejudicial where the same witness gives the evidence fully on redirect examination or on cross-examination, where the party on whose objection the evidence is excluded questions the witness concerning the same matter, or where the testimony is ruled out on cross-examination and later brought out when the party asking the question makes the witness his own." (4 C. J. 1017.)

"No prejudicial error results from the exclusion of particular evidence when the facts sought to be elicited are subsequently covered in full by the testimony of other witnesses." (4 C. J. 1018.)

Error is alleged because the trial court denied a new trial. The defendant produced newly discovered evidence, which went, however, only to Sarah's veracity. She had admitted on the trial that she had gone with a boy by the name of Taylor. She was asked if she had been at the place where he worked, and answered that she had not. On the motion for new trial the defendant offered the testimony of one Berger to the effect that he had seen her there about 8 o'clock one morning. He also offered the testimony of a Mrs. Pettis to show that Sarah had made persistent efforts to have Mrs. Pettis' son meet her. Sarah having testified in effect that she had gone very little with the boys, and usually when there were several together.

"Ordinarily a new trial will not be granted for newly discovered evidence to impeach a witness. Thus evidence to show that a witness had made statements inconsistent with his testimony or to contradict him on immaterial or collateral matters is seldom ground for a new trial." (29 Cyc. 918.)

"That newly discovered testimony tending however strongly to impeach and discredit the witnesses of the prevailing party is not ground for our interference with the trial court's ruling on a motion for a new trial, whether that ruling was the granting or refusing thereof, has often been decided." (*Pittman Co. v. Hayes,* 98 Kan. 273, 277.)

In *Parker v. Bates,* 29 Kan. 597, a new trial was refused notwithstanding a showing that the testimony of a material witness in the first trial was not true.

In *State v. Smith,* 35 Kan. 618, 11 Pac. 908, it was said:

"As a general rule, newly discovered evidence the purpose of which is to discredit a witness in the original trial, does not afford adequate ground for the granting of a new trial." (Syl. See, also, *Boyd v. Sanford,* 14 Kan. 280; *Taylor v. Thomas,* 17 Kan. 598; *Clark v. Norman,* 24 Kan. 515; *Manwell v. Turner,* 25 Kan. 426; *State v. Kearley,* 26 Kan. 77; *Sexton v. Lamb,* 27 Kan. 432; *Parker v. Bates,* 29 Kan. 597; *Lee v. Birmingham,* 39 Kan. 320, 18 Pac. 218.)

"The granting or the denial of a new trial on the ground of newly discovered evidence is within the discretion of the trial court, and its decision will not be disturbed except where there is a clear abuse of discretion. Thus the denial of a motion has been upheld as within the court's discretion where the evidence was merely cumulative; where every material fact alleged in the motion is contradicted by counter affidavits; where the evidence, if admitted, could be used only for purposes of impeachment; or where it was of a character which could not reasonably produce a different result." (4 C. J. 835. See, also, *State v. Stach,* 116 Kan. 187, 226 Pac. 238.)

A contention that a new trial should have been granted because the verdict was given under the influence of passion and prejudice cannot be sustained. In the absence of a showing to the contrary, we are bound to assume that the jury's handling of the facts wrought substantial justice, not only to one, but to both of the parties. (See *Cox v. Chase,* 99 Kan. 740, 163 Pac. 184.)

The judgment is affirmed.